UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

THE BANK OF NEW YORK MELLON TRUST
COMPANY, N.A.,

                      Plaintiff-Counterclaim Defendant,

      -against-

DEPFA BANK PLC and LLOYDS TSB BANK PLC,

                Defendants-Counterclaimants.

DEPFA BANK PLC,

              Third-Party Plaintiff,

      -against-

ACCESS TO LOANS FOR LEARNING
STUDENT LOAN CORPORATION and JPMORGAN
CHASE BANK, N.A.,

          Third-Party Defendants.

LLOYDS TSB BANK PLC,

              Third-Party Plaintiff,

      -against-

ACCESS TO LOANS FOR LEARNING
STUDENT LOAN CORPORATION,

          Third-Party Defendant.

Case No.:  10-CV-4424 (JPO) (AJP)

## MEMORANDUM OF LAW IN SUPPORT OF
## THE BANK OF NEW YORK MELLON TRUST COMPANY N.A.'S
## MOTION TO EXCLUDE PROPOSED EXPERT TESTIMONY
## OF JOEL POWERS AND STEVEN THEL

Judith A. Archer
Sarah E. O'Connell
Fulbright & Jaworski, LLP
666 Fifth Avenue
New York, New York 10103
(212) 318-3000
*Attorneys for the Bank of New York
Mellon Trust Company, N.A.*

55749694.5

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ................................................................................................................. 2

I.     POWERS LACKS THE QUALIFICATIONS REQUIRED TO RENDER THE
OPINIONS HE PROFFERS RELIABLE, HIS OPINIONS USURP THE ROLE
OF THE FACTFINDER AND DO NOT "FIT" THE EVIDENCE IN THE CASE ......... 6

     A.    Powers' Qualifications Are Insufficient to Qualify Him as an Expert ................. 7

     B.    Even Were Powers Sufficiently Qualified, His Opinions are Neither
Relevant Nor Reliable .......................................................................................... 10

     1.    Powers' opinions are contrary to law and do not "fit" the evidence in the
case ......................................................................................................................... 10

     i.    Consent rights ........................................................................................................ 11

     ii.    The meaning of "supplement" and "amendment" ................................................. 14

     iii.    Parity ...................................................................................................................... 15

     2.    Powers' proposed testimony usurps the role of the Court as the trier of fact
and law ................................................................................................................... 17

II.    THEL'S OPINIONS IMPERMISSIBLY RELY ON THE OPINIONS OFFERED
BY POWERS AND ARE INDEPENDENTLY UNSUPPORTABLE .......................... 20

     A.    Thel Lacks Any Industry Qualifications From Which to Opine as to the
Validity of Powers' Conclusions Regarding Consent ......................................... 20

     B.    Thel's Conclusions Rest Solely on Ipse Dixit ..................................................... 22

     C.    Thel's Opinions as to the Proper Interpretation of Agreements is
Impermissible ....................................................................................................... 23

CONCLUSION .................................................................................................................. 25

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Home Assurance Co. v. Merck & Co., Inc.*,
  462 F. Supp. 2d 435 (S.D.N.Y. 2006)...................................................................7, 17, 19, 24

*Amorgianos v. Nat'l R. R. Passenger Corp.*,
  303 F.3d 256 (2d Cir. 2002)......................................................................................6

*Barban v. Rheem Textile Systems, Inc.*,
  2005 U.S. Dist. LEXIS 5996 (E.D.N.Y. Feb. 11, 2005)..............................7, 8, 10, 11, 14, 15

*Bazile v. City of New York*,
  215 F. Supp. 2d 354 (S.D.N.Y. 2002).......................................................................10

*Boucher v. U.S. Suzuki Motor Corp.*,
  73 F.3d 18 (2d Cir. 1996)............................................................................................6

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993)....................................................................................1, 5, 17, 23, 25

*Fernandez v. Central Mine Equip. Co.*,
  670 F. Supp. 2d 178 (E.D.N.Y. 2009) ........................................................................6

*Gateway Equip. Corp v. U.S.*,
  247 F. Supp. 2d 299 (W.D.N.Y. 2003) at 309 ...........................................................22

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997).............................................................................................5, 25

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999)..............................................................................................5, 6

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*,
  525 F. Supp. 2d 558 (S.D.N.Y. 2007).......................................................................11

*Luizzi v. Pro Transport, Inc.*,
  2011 WL 1655567 (E.D.N.Y. 2011)..........................................................................24

*Marketing/Trademark Consultants, Inc. v. Caterpillar, Inc.*,
  2000 U.S. Dist. LEXIS 7952 (S.D.N.Y. June 9, 2000).............................................13

*Marx & Co. v. Diners' Club, Inc.*,
  550 F.2d 505 (2d Cir. 1977)..............................................................................17, 24

*Media Sport & Arts s.r.l. v. Kinney Shoe Corp.*,
  1999 U.S. Dist. LEXIS 16035 (S.D.N.Y. Oct. 19, 1999) .......................................19, 24

*New York Marine & Gen. Ins. Co. v. LaFarge N. Am., Inc.,*
   599 F.3d 102 (2d Cir. 2010)..........................................................................15

*Nora Beverages, Inc. v. Perrier Group of Am., Inc.,*
   164 F.3d 736 (2d Cir. 1998)..........................................................................12

*In re Ore Cargo, Inc.,*
   544 F.2d 80 (2d Cir. 1976)............................................................................15

*Point Prods. A.G. v. Sony Music Entertainment, Inc.,*
   2004 U.S. Dist. LEXIS 2676 (S.D.N.Y. Feb. 23, 2004).................................6

*R.B. Ventures, Ltd. v. Shane,*
   2000 U.S. Dist. LEXIS 5631 (S.D.N.Y. May 1, 2000)...................................6

*Rowe v. Great Atl. & Pac. Tea Co.,*
   385 N.E.2d 566 (N.Y. 1978)..........................................................................14

*Smith v. Herman Miller, Inc.,*
   2005 U.S. Dist. LEXIS 46112 (S.D.N.Y. Aug. 26, 2005)..............................6

*Solomon v. U.S. Trust Co.,*
   2004 WL 882066 (Cal. App. 2d April 26, 2004).....................................23, 24

*United States v. Bilzerian,*
   926 F.2d 1285 (1991).....................................................................................17

*VKK Corp. v. NFL,*
   244 F.3d 114 (2d Cir. 2001)..........................................................................15

*Zaremba v. Gen. Motors Corp.*
   360 F.3d 355 (2d Cir. 2004).......................................................................7, 20

**RULES AND STATUTES**

FED. R. CIV. P. 26(a)..........................................................................................21

FED. R. CIV. P. 26(a)(2)(B)(i)............................................................................21

FED. R. CIV. P. 37(c)(1)......................................................................................21

Fed. R. Civ. P. 704(a) ..................................................................................17, 18

FED. R. EVID. 702........................................................................5, 6, 7, 13, 17, 22, 23

FED. R. EVID. 702(1) ...................................................................................13, 22

Uniform Commercial Code..................................................................................15

Pursuant to Federal Rules of Evidence 104, 402, 403, 702, and the United States Supreme Court's holdings in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny, plaintiff The Bank of New York Mellon Trust Company, N.A. ("BNY Mellon"), files this motion to exclude the opinions and testimony of the experts retained by Depfa BANK plc ("Depfa") Joel Powers and Steven Thel from the trial of this case. Defendant and third-party plaintiff Lloyds TSB Bank plc ("Lloyds") and third-party defendants Access to Loans for Learning Student Loan Corporation ("ALL") and JPMorgan Chase Bank, N.A. ("JPMC") join this motion.

## PRELIMINARY STATEMENT

Depfa designated Joel Powers to provide expert testimony as to the custom and usage of the terms "supplement," "amend" and parity in the student loan financing industry, as well as whether Depfa's consent was required before ALL could issue additional bonds under the Indenture, and whether the Depfa and Lloyds bonds were in parity. Powers does not have adequate qualifications to offer reliable opinions on these issues. His experience is limited to one bank that provided credit enhancement for student loan transactions, and he could not recall with specificity the details of the few allegedly relevant transactions with which he was involved. While he attempts to bolster his testimony by stating that he had multiple conversations with other industry participants, he can recall the specifics of no such conversation. Even were Powers sufficiently qualified, his opinions are not reliable in that they are contrary to law and do not "fit" the facts of the case. The relevance of Powers' testimony is further called into question because it impinges on the Court's role by providing legal conclusions. Such testimony should not be permitted.

Depfa designated Steven Thel to rebut the testimony of BNY Mellon's expert, Robert Landau, with respect to the Trustee's role, and the meaning of the terms "supplement," "amend" and parity in the bond industry. In attempting to provide rebuttal testimony, Thel impermissibly relies on the opinions offered by Powers. Without such reliance, Thel is inadequately qualified to render an opinion as to whether or not Depfa's consent was required for issuance of additional bonds – an opinion that he rests solely on *ipse dixit*. Without sufficient facts or data on which to base his opinion, Thel's testimony as to Depfa's consent rights, as well as the opinions that flow therefrom, are demonstrably unreliable and should be excluded.

## BACKGROUND[1]

Depfa has asserted claims against (i) ALL for breach of contract for failure to obtain Depfa's prior written consent before executing a Second Supplement to the Trust Indenture between ALL and JPMC, Securing Student Loan Program Revenue Bonds (Series V), dated August 1, 2005 (the "Indenture") (Count I); (ii) breach of contract against JPMorgan for failure to obtain Depfa's prior written consent to amend the Indenture (Count VI); (iii) breach of contract against BNY Mellon for failure to make mandatory redemption payments (Count VII); (iv) breach of fiduciary duty against BNY Mellon for improper redemption payments from the trust assets (Count VIII); (v) conversion against Lloyds TSB Bank plc ("Lloyds") (Count IX); and (vi) tortious interference with contract against Lloyds (Count X). The gravamen of Depfa's claims are assertions that Depfa had the right to consent to the issuance of additional bonds, no such consent was provided, the issuance of the additional bonds constituted an impermissible amendment of the Indenture, any of the contracts with Lloyds were therefore impermissible, and any payments made to Lloyds violated Depfa's rights.

---

[1]     A detailed statement of facts describing the parties, the transactions, and the relevant documents is set forth in BNY Mellon's Pre-Trial Memorandum, and will not be repeated herein.

To support its claims and contentions in this action, Depfa retained Joel Powers, a former

Vice President of Dexia Credit Local, and Steven Thel, a professor of law at Fordham University

School of Law, to give expert testimony on certain issues.  In his expert report dated August 5,

2011 (Trial Ex. 189), Powers sets forth the opinions to which he expected to testify at trial:

- The consent rights set forth in Section 5.03 of the Standby Bond Purchase Agreement by and among ALL, JPMC and Depfa for ALL Senior Series V-A-1 and V-A-2 Bonds, dated August 1, 2005 (the "Depfa SBPA") did not explicitly exclude consent for the issuance of additional bonds, and therefore Depfa's consent was required before ALL could issue additional bonds under the Indenture (Trial Ex. 189 at 4; I.A);

- Provisions of the Second Supplemental Indenture between ALL and JPMC, Relating to Senior Series V-A-3, V-A-4, and V-A-5 Bonds, dated August 1, 2006 (the "Second Supplemental Indenture") concerning payments to Lloyds under the Standby Bond Purchase Agreement and among ALL, JPMC, and Lloyds TSB Bank plc ("Lloyds") for ALL Senior Series V-A-3, V-A-4 and V-A-5 Bonds (the "Lloyds SBPA") constituted an "amendment" or "modification" of the Indenture, as those terms are understood in the bond industry, thus Depfa's consent was required for this additional reason (Trial Ex. 189 at 5, I.B);

- "Parity" means that senior bond holders have an equal and ratable claim to proceeds from the sale of any liquidated collateral, including through principal recoveries during the term out period (Ex. Trial Ex. 189 at 5, II.A);

- Depfa's bonds and Lloyds' bonds are not in "parity" because a disproportionate share of optional redemptions were made in favor of Lloyds (Trial Ex. 189 at 5, II.B);

- Because ALL's principal payments to Lloyds resulted in Lloyds receiving in excess of its pro rata share of collateral, Depfa's bonds are subject to a greater amount of principal loss and thus, the two bonds are not in parity (Trial Ex. 189 at 5-6, II.C); and

- Multiple series of bonds can be paid different interest rates and still be on a parity basis, however because Lloyds' bonds are permitted a higher priority of principal repayment from available collateral, the two bonds are not in parity.  (Trial Ex. 189 at 6, II.D)

Powers' opinions are unreliable and inadmissible.  Powers does not have sufficient

expertise on which to base his opinions.  Further, his opinions, while couched as based on

custom and practice, are legal opinions that are contrary to law and do not "fit" the evidence in this case.

In his Rebuttal Report dated August 31, 2011 (Trial Exhibit 194), Thel sets forth the opinions to which he expected to testify at trial:

- He agrees with Powers that the execution of the Second Supplemental Indenture and the Lloyds SBPA violated Depfa's rights under its SBPA (Trial Ex. 194 at 3, ¶ 10);

- The Second Supplemental Indenture and the Lloyds SBPA could not be entered into without Depfa's consent (Trial Ex. 194 at 4, ¶ 12);

- JPMC violated its obligations to Depfa in executing the Second Supplemental Indenture in that JPMC did not obtain Depfa's consent prior to entering into such agreement (Trial Ex. 194 at 3, ¶¶ 11, 13, 14);

- JPMC was not protected by the opinions of counsel because they did not conform to the requirements of § 7.3(b) of the Indenture (Trial Ex. 194, ¶¶ 15-22); and

- Because the Second Supplemental Indenture was never properly made part of the Indenture, BNY Mellon breached its obligations to Depfa under the Depfa SBPA and the Indenture when it made payments to Lloyds and failed to make payments to Depfa (Trial Ex. 194 at ¶ 23-25).

Thel impermissibly relies on Powers' report for the basis of many of his opinions. To the extent that his opinions are not based on complete reliance on Powers, he lacks any experience on which to basis his testimony other than his years interpreting the law as a law school professor. Not surprisingly, the opinions he offers are impermissible legal opinions.

For the foregoing reasons, and as discussed more fully below, BNY Mellon requests that the Court exclude Powers and Thel's opinions and preclude Powers and Thel from testifying at the trial of this matter.

## <u>ARGUMENT</u>

In *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), the Supreme Court held that trial courts are required to serve as evidentiary "gatekeepers" and must conscientiously screen expert testimony for relevance and reliability. *Id.* at 597. A court should exclude the testimony of an expert if it does not meet the appropriate standards. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993). As the Supreme Court recognized in *Daubert*, "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it," and therefore, the trial court should exercise "more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595.

For an expert's testimony to be admissible, the Federal Rules of Evidence dictate that (i) the testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue," (ii) the expert must be "qualified as an expert by knowledge, skill, experience, training, or education," *and* (iii) the testimony must meet the following requirements: (1) the expert's testimony must be based on sufficient facts or data, (2) the expert's testimony must be the product of reliable principles and methods, *and* (3) the expert must apply the principles and methods reliably to the facts of the case. FED. R. EVID. 702. "Proposed testimony must be supported by appropriate validation – *i.e.*, 'good grounds,' based on what is known." *Daubert*, 509 U.S. at 590. An expert cannot connect existing data to his opinions by his mere *ipse dixit*. *See, e.g.*, *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Furthermore, an expert's testimony cannot be based on mere subjective belief or unsupported speculation. *Daubert*, 509 U.S. at 590. While expert opinion testimony regarding the customs and practice of an industry is admissible, there are two "crucial" provisos – that the expert's opinion "'will assist the trier of fact to

understand the evidence or to determine a fact in issue,'" and that the "opinion does not usurp the traditional functions of the jury and trial judge." *R.B. Ventures, Ltd. v. Shane*, 2000 U.S. Dist. LEXIS 5631, *5 (S.D.N.Y. May 1, 2000) (quoting FED. R. EVID. 702).

Once a movant challenges an expert's testimony, the burden shifts to the party offering the expert to prove by a preponderance of the evidence that the expert's testimony is reliable and relevant. *Smith v. Herman Miller, Inc.*, 2005 U.S. Dist. LEXIS 46112, *5 (S.D.N.Y. Aug. 26, 2005) ("The burden is on the party proffering the expert testimony to lay a foundation for its admissibility"); *see also Point Prods. A.G. v. Sony Music Entertainment, Inc.*, 2004 U.S. Dist. LEXIS 2676, *11 (S.D.N.Y. Feb. 23, 2004). In ruling on the admissibility of expert opinion evidence, the district court has broad discretion, and the exclusion of expert evidence is to be sustained unless manifestly erroneous. *Amorgianos v. Nat'l R. R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002). While the weight given to expert testimony is left to the finder of fact, such testimony should be completely excluded if it is "speculative or conjectural." *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996).

I.   **POWERS LACKS THE QUALIFICATIONS REQUIRED TO RENDER THE OPINIONS HE PROFFERS RELIABLE, HIS OPINIONS USURP THE ROLE OF THE FACTFINDER AND DO NOT "FIT" THE EVIDENCE IN THE CASE**

Rule 702 sets forth a two-part test to determine admissibility of expert testimony. First, the court must determine whether the proposed witness qualifies as an expert. *Fernandez v. Central Mine Equip. Co.*, 670 F. Supp. 2d 178, 182 (E.D.N.Y. 2009). If the proposed witness qualifies, the court must inquire into whether the testimony provided by the expert is relevant and reliable. *Id.*, citing *Kumho Tire Co. v. Carmichael*, 526 U.S. at 152.

### A.     Powers' Qualifications Are Insufficient to Qualify Him as an Expert

Powers fails the first part of the Rule 702 analysis because his qualifications are insufficient to qualify him as an expert. *See Zaremba v. Gen. Motors Corp.* 360 F.3d 355, 360 (2d Cir. 2004) (upholding exclusion of unqualified witness and describing an analysis of the reliability of the witness's methods as "superfluous" where the witness lacked qualifications); *Barban v. Rheem Textile Systems, Inc.*, 2005 U.S. Dist. LEXIS 5996, *10-11 (E.D.N.Y. Feb. 11, 2005) (excluding testimony and holding that expert lacked requisite qualifications as an expert). The Court should compare Powers' area of expertise with the opinions he seeks to offer, admitting the proposed testimony only if the alleged expertise allows Powers to offer an opinion capable of assisting the Court. *See Am. Home Assurance Co. v. Merck & Co., Inc.*, 462 F. Supp. 2d 435, 447 (S.D.N.Y. 2006) (excluding expert testimony in part). Such comparison reveals that Powers is inadequately qualified to render the opinions he offers.

Powers' qualifications are insufficient to qualify him as an expert as to the meaning of the term parity with respect to collateral rights, and the meaning of relevant terms incorporated in bond transaction documents, such as "supplement," "amendment," and consent rights. While Powers has 25 years of experience in the credit industry, his only experience with any type of bond-backed lending was as a Vice President for Dexia Credit Local from 1999-2009. (Trial Ex. 189 at 2, Ex. 1; Powers Tr. at 49:13-16; 51:2-5; 49:13-16; 51:2-5)[2] While at Dexia, he worked on approximately 10-15 liquidity and credit enhancement transactions supporting tax-exempt student loan revenue bonds, of which only 8-12 involved standby bond purchase agreements. (Trial Ex. 189 at 2; 23:21-24:6; 26:16-27:2; 42:11-16; 46:14-47:3) He has not published any books or articles, taught any courses, given any formal presentations regarding student-loan

---

[2]     The cited portions of the deposition of Joel Powers dated September 27, 2011 are annexed to the Declaration of Judith A. Archer, dated October 31, 2011, as Exhibit A.

bonds or any bonds, or received any formal awards for his work regarding bonds. (Powers Tr. at 51:6-54:2)  Nor is he a member of any bar association committee or other formal organization concerning bonds. (Powers Tr. at 53:4-54:2)  Powers has never testified in any legal proceeding, and has never been retained as an expert. (Trial Ex. 189 at 3; Powers Tr. 8:8-15)  Powers estimated that there were approximately five to fifteen banks that provided liquidity for student loan backed bond deals in the 2005-2008 time frame, but he worked for only one of those entities. (Powers Tr. at 239:25-240:10)  These qualifications are insufficient to qualify Powers to render expert testimony as proposed. *See Barban*, 2005 U.S. Dist. LEXIS 5996, *10 (E.D.N.Y. Feb. 11, 2005) (excluding proposed expert testimony where proposed expert had never provided testimony, conducted studies, authored articles, and had no experience with particular feature at issue).

Powers never drafted or negotiated an indenture of any type.  (Powers Tr. at 21:13-22:9)  Nor did Powers ever draft a standby bond purchase agreement. (Powers Tr. at 22:10-15)  While Powers reviewed and commented on standby bond purchase agreements, he did so only with respect to the business terms. (Powers Tr. at 23:21-24)  And while Powers claims that certain consent rights are "standard" in the industry, he was never engaged in negotiations with respect to such consent rights. (Powers Tr. at 26:5-15)  Nor was Powers involved in any negotiations regarding a parity provision in a bond indenture. (Powers Tr. at 35:14-18)  Powers further testified that he has no specific recollection of discussing the issue of consent rights or parity with counsel. (Powers Tr. at 24:2-20)  While Powers puts himself forth as an expert on the terms "supplement" and "amend" in the student loan financing industry, he reviewed supplemental indentures, but only with respect to business issues. (Powers Tr. at 81:7-14).

Both Dexia and Powers were newcomers to the student loan lending business when he joined Dexia in 1999. (Powers Tr. at 38:15-39:12)  He therefore had to learn the industry.  (*Id.*) The source of Powers' knowledge of the custom and practice of the student loan industry is the 10-15 deals (with only 8-12 involving SBPA's) that he worked on while at Dexia, as well as alleged interactions with "industry participants," none of which he could recall with specificity. (Powers Tr. at 242:7-243:11)   The purpose of such interactions, however, was to build the student loan business at Dexia, not to discuss specifics of provisions in standby bond purchase agreements such as consent rights or the meaning of the term parity, areas where Powers purports to proffer expertise.  (Powers Tr. at 242:13-15; 244:19-25; 245:2-246:24)  His alleged "industry" expertise is based only on the deals on which he worked, at the one bank where he was employed.

Powers' only involvement with ALL was as a purchaser of student loan bonds with a stated maturity date and without a liquidity provider, described as "buy and hold bonds." (Powers Tr. 15:9-16:19)  He never worked for an entity that provided liquidity or credit enhancement for any transaction involving ALL. (Powers Tr. 89:6-12)  Given other expert testimony, unchallenged by Powers (Powers Tr. 89:13-23), that the language employed in indentures with respect to the terminology of the document used to issue additional bonds differs from state to state (Pope Rebuttal Report at 2), his lack of familiarity with the meaning of the terms in California, where ALL is located, or any familiarity with ALL itself is fatal to his proposed expertise.  (Powers Tr. at 89:24-90:4)  As Powers himself admits, he "can't comment [on] what language was in [ALL's] agreements."  (Powers Tr. at 89:6-12)

Powers admits that he worked on only approximately *three* transactions where bonds became bank bonds.  (Powers Tr. 192:7-16)  In none of those transactions, however, does

Powers have any knowledge or information as to how any of the liquidity providers other than Dexia were repaid.   (Powers Tr. at 133:21-134:21; 264:22-265:7)   While he testifies as to "industry practice" with respect to the repayment of bank bonds that are in parity, he admits having absolutely no actual knowledge as to how *any* bank bonds were repaid other than his own. (Powers Tr. at 264:22-265:7)  Thus, bank bonds in the transactions for which Powers has any familiarity may have been redeemed pro rata, as Powers posits is industry practice, or they may have been redeemed pursuant to the terms of the relevant standby bond purchase agreements – Powers has no way of knowing either way.

Powers' lack of relevant experience and qualifications "plainly conveys that whatever opinion he will ultimately express" will be "imaginatively speculative." *Barban*, 2005 U.S. Dist. LEXIS 5996, *10-11 (E.D.N.Y. Feb. 11, 2005) (excluding proposed testimony). *See also Bazile v. City of New York*, 215 F. Supp. 2d 354, 365 (S.D.N.Y. 2002) (excluding testimony where proposed expert had general experience supervising law enforcement personnel, he had none in conducting internal disciplinary investigations such as the one at issue).  Such testimony must be excluded.

**B.      Even Were Powers Sufficiently Qualified, His Opinions are Neither Relevant Nor Reliable.**

**1.      Powers' opinions are contrary to law and do not "fit" the evidence in the case**

A crucial step in determining admissibility of expert testimony is determining whether the testimony is relevant "in that it 'fits' the facts of the case." *Bazile*, 215 F. Supp. 2d at 365 (excluding expert testimony for lack of fit).

i.      **Consent rights**

Powers' proposed testimony with respect to consent rights is impermissible.  It lacks reliability in that it is not based on sufficient facts or data.  It contradicts well-settled law and the substantive evidence presented in this case.  Such opinions must be excluded.  *See Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 663 (S.D.N.Y. 2007) (excluding expert witness testimony that had "no connection" with "the substantive law"); *Barban*, 2005 U.S. Dist. LEXIS 5996, *19 (E.D.N.Y. Feb. 11, 2005) (holding that expert testimony should be excluded as unreliable where opinion was contradicted by well-established legal principles).

While Powers initially testifies that there is a certain consent provision that is "standard in the industry" (Powers Tr. at 34:6-13), he then goes a problematic step further to opine that because the consent provision in the Defpa SBPA does not specifically exclude consent for the issuance of additional bonds, the legal effect of the consent provision is to include such a consent right.  (Powers Tr. at 96:18-97:5, 97:20-98:2)  These opinions are impermissible in several respects.

As an initial matter, Powers claims that the consent provision to which he is most accustomed – what he describes as a carve out from the consent right for the issuance of additional bonds is "standard" (Powers Tr. at 70:6-14; 88:22-89:5)  yet he has only worked on 8-12 SBPAs, none of which involved ALL.  Powers has no knowledge or information as to what is standard for ALL.  (Powers Tr. at 89:6-12)  Powers could not even testify with certainty what was standard for Dexia, the bank for which he worked.  (Powers Tr. at 94:3-95:5)  Further, Powers admits that it is likely that there are different forms of consent provisions, not all of which contain the language that he claims is "standard."  (Powers Tr. at 95:16-21)  He also testified that there were approximately 50 issuers of student-loan bonds in 2005-10 (Powers Tr.

at 238:24-239:24)  Extrapolating a basis for an industry standard from 8-12 documents out of potentially thousands is unsupportable, particularly where there is an explicit recognition that other forms of the language in question are used.

Further, as Powers testified, SBPAs are typically drafted by counsel.  (Powers Tr. at 22:10-15)  While at Dexia, Powers worked with only *one* law firm with respect to SBPAs. (Powers Tr. at 240:20-25)  Powers understanding of what constituted "standard," therefore, stems from the fact that such language was used in the initial SBPA that was drafted by counsel and provided by Dexia to an issuer, and such provision was not stricken from any of the documents in which he was involved.  (Powers Tr. at 94:3-17)  In response to a question as to whether the carveout for the issuance of additional bonds was included in all of the SBPAs that Powers negotiated for Dexia, he responded:

> I mean, as I recall, it was standard provision given the fact that I doubt an Issuer would object to that provision.  So, I'm going to have to say it probably was.  I mean, do I know for absolutely certainty, in every single case?  But I can say that that was our standard, at least initial, SBPA that we provided to an Issuer.  And I see no reason why an Issuer wouldn't want that in there.  That's all – that's – so, mostly likely, nearly very certain that it was a standard.  That was not stricken from our documents."

(*Id.*)  Extrapolating a basis for an industry standard from language that Powers cannot even definitively recall having appeared in 8-12 SBPA's on which he worked is even more egregious and unsupportable.  *See Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998) (upholding exclusion of proffered expert whose experience did not qualify him to testify on contract negotiations because he conceded that he was never directly involved in negotiating agreements and could not recall the details of agreements into which his company entered).  An opinion based on *8 to 12* deals, which he cannot recall with specificity, involving *one* bank, and drafted by *one* law firm, is not based on sufficient underlying "facts or

data" to provide reliable expertise. *See* FED. R. EVID. 702(1); Advisory Committee Note to 2000 Amendments, West's Federal Civil Judicial Procedure and Rules (2011 ed.) at 481 ("Subpart (1) of Rule 702 calls for a *quantitative* rather than qualitative analysis.") (emphasis added).

One of the bases for Powers' opinion as to the scope of the consent rights in this action is the language in a standby bond purchase agreement for a transaction involving the Utah State Board of Regents (the "Utah SBPA"). As an initial matter, the meaning of other agreements provides no basis from which to infer that ALL and Depfa agreed to act in a similar manner. *See Marketing/Trademark Consultants, Inc. v. Caterpillar, Inc.*, 2000 U.S. Dist. LEXIS 7952, *9 (S.D.N.Y. June 9, 2000) (excluding expert testimony regarding the meaning of agreements involving other parties).

Powers attempts to support the relevance of the Utah SBPA by asserting that it was used as a "model" by Depfa's counsel for the SBPA at issue. (Powers Tr. at 90:14-91:12) That is incorrect. As set forth in more detail in the Memorandum of Law in Support of Motion *in Limine* to Exclude Evidence of Utah Transaction, Including Trial Exhibit 21, there is no evidence that Depfa's counsel did, in fact, use the Utah SBPA as a model for the Depfa SBPA. Nor, as Powers admits, is there any evidence that ALL or the Trustee, the parties against whom Depfa wishes to enforce the alleged consent right, ever saw, reviewed or commented on the Utah SBPA. (Powers Tr. at 281:25-282:13; 285:4-20) Further, the Utah SBPA was drafted by counsel representing Dexia in the deal, Chapman and Cutler (Powers Tr. at 44:21-25; 240:20-25), a law firm with no involvement in the ALL Series V transactions. The attorney who represented Depfa in both the Utah deal and the ALL Series V deal at issue, Elizabeth Davis, testified that there was a specific reason to include the language "except the amendments relating to the issuance from time to time of additional bonds under the indenture . . ." which Powers

points to as "standard." (Davis Tr. at 150:25-151:25)[3] The Utah deal involved an existing bond issue, as opposed to a new issue like the ALL Series V deal. (*Id.*) As Ms. Davis testified, an existing liquidity provider was being replaced and the issuer, Utah, wanted to use the SBPA from that liquidity provider for Depfa. (*Id.*)

Notwithstanding this incorrect factual assumption, Powers further testifies that the failure to expressly exclude the right of consent to additional bond issues necessarily means that Depfa had the right to consent to additional bond issues. (Powers Tr. at 96:18-97:8, 97:20-98:2) Even were such testimony not a legal conclusion, and subject to exclusion on that basis alone, Powers' testimony is contrary to well-settled law. As the New York Court of Appeals held in *Rowe v. Great Atl. & Pac. Tea Co.*, 385 N.E.2d 566 (N.Y. 1978), "courts should be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include. . . . [L]ack of foresight does not create rights or obligations." *Id*. 385 N.E.2d at 571-72. Because Powers' testimony is contradicted by well-settled law, it should be excluded. *See Barban v. Rheem Textile Sys., Inc.*, 2005 U.S. Dist. LEXIS 5996, *19 (E.D.N.Y. Feb. 11, 2005) (holding that expert testimony should be excluded as unreliable where opinion was contradicted by well-established legal principles).

### ii.    The meaning of "supplement" and "amendment"

Section 5.03(a) of the Depfa SBPA provides that ALL shall not "amend, modify. . . or permit the amendment, modification . . . of, any waiver under, or consent to, or permit to suffer to occur any action or omission which results in, or is equivalent to, an *amendment, modification*, or grant of a waiver under, the . . . Indenture without the prior written consent of [Depfa]." Trial Ex. 1 at § 5.03(a) (emphasis added). This language provides that Depfa has the right to consent

---

[3]    The cited portions of the deposition of Elizabeth Davis, dated April 28, 2011, are annexed to the Declaration of Judith A. Archer, dated October 31, 2011, as Exhibit B.

to amendments or modifications of the Indenture, but does not provide a consent right for supplements to the Indenture.

Powers attempts to import the term "supplement" into this provision by claiming that the terms "supplement" and "amendment" are synonymous. (Powers Tr. at 77:6-78:11) Such testimony is contrary to law and the facts of this case. Were the term "amend" to mean "supplement," as Powers believes, the word "supplement" used side by side next to "amend" throughout the Indenture (*see* Trial Ex. 1 at p. 1 , first Whereas clause; p. 5; § 5.01(f)(iii); § 8.05(b)) would impermissibly be rendered superfluous. *See New York Marine & Gen. Ins. Co. v. LaFarge N. Am., Inc.*, 599 F.3d 102, 116 (2d Cir. 2010) ("a court must strive to give meaning to every sentence, clause and word" of a contract).

Further, under the doctrine of *expression unius est exclusio alterius*, the expression of certain items ("[a]mend, modify, terminate or grant") in Section 5.03(a) of the Depfa SPBA means the exclusion of others ("supplement"). *See, e.g., In re Ore Cargo, Inc.*, 544 F.2d 80, 82 (2d Cir. 1976) (contract giving security interest in "claims" could not be construed to confer a right not conferred by the U.C.C. – a security interest in tort claims – where sophisticated commercial lender failed to include a specific reference to tort claims); *VKK Corp. v. NFL*, 244 F.3d 114, 130 (2d Cir. 2001) (release signed by sophisticated commercial actor did not encompass persons not specifically listed). Because Powers' testimony as to the identity in meaning between the terms "supplement" and "amend" as used in the Indenture and Depfa SBPA is contrary to law, it should be excluded. *See Barban*, 2005 U.S. Dist. LEXIS 5996, *19.

###        iii.        Parity

Powers' theory of parity is not only nonsensical, but contrary to the testimony of virtually every witness in this case as well as universally accepted standards in the bond industry. The

parties, including the drafter of the Indenture and the supplements thereto, the primary negotiator of the Indenture, supplements, and SBPAs of ALL, the Trustee, and the primary business people from both Lloyds and Depfa all testified that parity bonds have a shared priority claim to the underlying collateral. *See* Bayus Tr. at 43-49; Peterson Tr. at 34-38; Roemlein Tr. at 86-90; Park Dep. at 124-128; Watkins Tr. at 60-61, 80-83. Parity does not require payment of all parity debt on identical terms. *Id.* This understanding that parity reflects a priority of lien on the underlying collateral is confirmed by the definition of "parity bonds" in the *Glossary of Municipal Securities Terms*, Second Edition, published by the Municipal Securities Rulemaking Board which defines "Parity Bonds" as "[t]wo or more issues of bonds that have the same priority of claim or lien against pledged revenues or other security." (Trial Ex. 191 at 83)

Powers attempts to pick and choose those bargained-for provisions to which his definition of parity applies, further highlighting his transparent attempt to manufacture a theory of parity that most benefits Depfa. Powers opines that for bonds to be in parity, any payments to bondholders out of "liquidated collateral," whether before or after an event of default or an acceleration of principal, must be made on a pro rata basis. (Trial Ex. 189 at 5) Powers even goes so far as to assert that if the terms of the governing contracts provide for one bondholder to receive a greater amount of principal than another bondholder at a given time, the Trustee should disregard the provisions of the contracts, and pay the parties no more than their pro rata share of liquidated collateral. (Powers Tr. at 129:12-130:9; 132:18-133:4) When it comes to interest, however, Powers asserts that Depfa is entitled to its contracted for interest rate – a rate that is significantly higher than the interest rate on the Lloyds bonds and reflects Depfa's agreement to a longer redemption term – but that Lloyds is not entitled to retain the benefits of its faster redemption schedule. (Powers Tr. 223:12-224:8) Not surprisingly, Powers testifies that he sees

no inconsistency in permitting the client on whose behalf he is testifying to retain the benefit of its higher interest rate while also getting a benefit for which it did not bargain – that of a pro rata share in liquidated collateral regardless of the fact that its bargained for redemption payments were to occur on a less frequent basis over a longer period than that of the Lloyds bonds. (Powers Tr. at 225:17-226:17)   Such blatantly partisan testimony, which flies in the face of the testimony of those individuals actually involved in the transaction, should be excluded.

**2.      Powers' proposed testimony usurps the role of the Court as the trier of fact and law**

The final step in determining admissibility is to determine whether the proposed testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 580; FED. R. EVID. 702.

Rather than providing helpful insight that could assist the Court, Powers' proffered testimony impinges on the Court's role as trier of fact and law by proffering interpretations of various provisions in the parties' agreements.   An expert cannot give opinions on the interpretation of contract terms or their legal effect. *See Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 510 (2d Cir. 1977) ("The question of interpretation of the contract is for the jury and the question of legal effect is for the judge.   In neither case do we permit expert testimony."); *United States v. Bilzerian*, 926 F.2d 1285, 1294 (1991) ("As a general rule an expert's testimony on issues of law is inadmissible."); *Am. Home Assurance Co. v. Merck & Co., Inc.*, 462 F. Supp. 2d 435, 449 (S.D.N.Y. 2006) (excluding expert testimony as to the correct interpretation of provisions in the agreement).   As the Advisory Committee notes to Rule 704(a) make clear, the opinion is not admissible if it would "merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day."   West's Federal Civil Judicial Procedure and Rules (2011 ed.) at 484.

In his expert report, Powers repeatedly and blatantly crossed the line:

- "[Depfa's] consent was required before new bonds could be issued." (Trial Ex. 189, p. 4.)

- "[C]ertain provisions of the Second Supplemental Indenture concerning payments to Lloyds under the Lloyds SBPA constituted an 'amendment' or 'modification' of the Indenture. . . . Accordingly, Depfa's prior written consent was required for these independent reasons as well." (*Id.* at 5.)

- "Depfa's bonds and Lloyds' bonds are not in 'parity.'" (*Id.*)

- "Given that ALL and the Trustee agreed to an SBPA that did not expressly exclude Depfa's right of consent to the issuance of additional bonds, I believe that Depfa's right of consent was required for a supplemental indenture through the issuance of additional bonds." (*Id.* at 9.)

- "In my opinion, giving Lloyds a priority in repayment ahead of Depfa in the waterfall likewise constituted an amendment that required Depfa's consent." (*Id.* at 12.)

- "Because Lloyds received more than its ratable share of the pledged collateral to repay its bonds' principal and ALL did not retain within the trust amounts to pay Depfa its ratable share, Depfa's bond and Lloyds' bonds were not in parity." (*Id.* at 19.)

The above opinions not only cover the ultimate issues in the case. They all are opinions on the interpretation and legal effect of the terms of the Depfa SBPA and Indenture. Even if a non-lawyer like Powers were qualified to give legal opinions (which he admits he is not), the law prohibits him from doing so.

In his deposition, Powers did the same. He testified repeatedly that the entry into the Second Supplemental Indenture and the Lloyds SBPA violates Defpa's consent rights, among other things because the consent right included the issuance of additional bonds by supplemental indenture (although the term supplement is noticeably absent from the consent provision) and the two series of bonds are not in parity. (*See, e.g.*, Powers Tr. at 87:6-21; 165:4-13) While Powers

disclaims that he is offering a legal opinion, such "opinions" can be nothing but legal opinions –
Powers is advising the Court as to how various provisions should be interpreted. (*See, e.g.,*
Powers Tr. at 234:6-21; 235:14-23; 236:15-127:9)   This exact type of testimony has been
rejected by courts.   In *American Home Assurance Co.*, the court precluded the expert from
testifying regarding his opinion as to the correct interpretation of the provisions in the contract at
issue.   The court noted that the report proffered the expert's readings of various clauses in the
contract.   *Am. Home Assurance Co.*, 462 F. Supp. 2d at 448.   The court held that such
discussions clearly impinged on the province of the court "in so far as he essentially proffers his
own version of contractual interpretation."   *Id.*   While the expert claimed not to be providing a
legal interpretation, applying the law to the facts, as the expert did, necessarily usurps the role of
the fact finder and must be excluded.   *Id.*   The court specifically noted that while the proposed
expert may have expertise on customs and practices generally with respect to the specific type of
contract at issue, "he is not an expert on *this* [contract], having had nothing to do with the
negotiating, drafting or performance of it."   *Id.* at 449.   Thus, the court held that the expert could
not "testify as to his understanding of the specific provisions of this policy or the import of
specific words or phrases of various clauses therein. . . ."   *Id.*   Powers admits that he is not
qualified to give legal advice as to the meaning of terms in bond contracts (Powers Tr. at 9:7-19),
yet he does just that.   Such testimony must be excluded.   *See Am. Home Assurance Co.*, 462 F.
Supp. 2d at 449; *Media Sport & Arts s.r.l. v. Kinney Shoe Corp.*, 1999 U.S. Dist. LEXIS 16035,
*9 (S.D.N.Y. Oct. 19, 1999) (excluding expert testimony that constituted "legal opinions as to
the meaning of the contract terms at issue").

## II.     THEL'S OPINIONS IMPERMISSIBLY RELY ON THE OPINIONS OFFERED BY POWERS AND ARE INDEPENDENTLY UNSUPPORTABLE

Thel, a professor of corporate finance, securities and contracts, whose only industry experience relating in any way to indentures or bond transactions occurred over a six year period ending in 1985, does not have the independent qualifications to opine as to whether the execution of the Second Supplemental Indenture and the Lloyds SBPA violated Depfa's rights under its SBPA or whether those documents could have been entered into without Depfa's consent. Without such qualifications, Thel's testimony should be excluded. *See Zaremba v. Gen. Motors Corp.* 360 F.3d 355, 360 (2d Cir. 2004) (upholding exclusion of unqualified witness and describing an analysis of the reliability of the witness's methods as "superfluous" where the witness lacked qualifications).  The remainder of Thel's opinions stem from this unfounded premise and should similarly be excluded. (*See* Trial Ex. 194 at 3, ¶¶ 11, 13, 14, 23-25)

### A.     Thel Lacks Any Industry Qualifications From Which to Opine as to the Validity of Powers' Conclusions Regarding Consent

As set forth in more detail above, while Powers' qualifications are scanty, they greatly exceed any substantive legal experience that Thel may have with respect to bond backed financing.  Thel admits that he has not practiced law actively since 1985. (Thel Tr. at 24:5-11)[4] After graduating from law school, he worked at the Office of the General Counsel of the Securities & Exchange Commission in its Enforcement & Disclosure Policy Group for two years. (Trial Ex. 194, Ex. 1 at 1)  While at the SEC, Thel believes his work related to trust indentures, but he had no recollection of it.  (Thel Tr. at 18:9-11)  Nor did he have any recollection of having worked on student loan liquidity facilities, student loan securitizations, student loan revenue bonds or methods of credit enhancement. (Thel Tr. at 18:12-23)  After

---

[4]     The cited portions of the deposition of Steven Thel, dated September 26, 2011, are annexed to the Declaration of Judith A. Archer, dated October 31, 2011, as Exhibit C.

leaving the SEC, Thel worked as an associate in the corporate group of Kilpatrick & Cody for two years. (Trial Ex. 194, Ex. 1 at 1; Thel Tr. at 20:3-17)  While at Kilpatrick & Cody, Thel participated in the drafting of approximately 2-4 trust indentures, based on models which he was given, for issuers and underwriters. (Thel Tr. at 20:25-21:19)  None of Thel's work at Kilpatrick & Cody related to student loan liquidity facilities, student loan securitizations, student loan revenue bonds or methods of credit enhancement.  (Thel Tr. at 22:17-23:3)  After leaving Kilpatrick & Cody in 1985, Thel has worked as a law professor in various law schools but has not returned to the active practice of law.  (Thel Tr. at 23:25-24:11)  Thel does not claim familiarity with student loan liquidity bonds. (Thel Tr. at 58:22-59:13)

Thel has adopted wholesale Powers' opinions as to Defpa's consent rights, despite acknowledging that he had only met Powers briefly, in an elevator, he never asked for more detail about Powers' experience, and did not have experience in the areas which Powers stated formed the basis for his rationale. (Thel Tr. at 59:6-60:14) Rather than experience relating to the student loan bond industry, or the bond industry in general, Thel relies on his experience "as a law professor dealing with the rights of security holders and the obligations of trustees for the last 30 years." (Thel Tr. at 62:11-16)  Thel points to no specific experience, case or treatise on which such opinion is based. (*See* Trial Ex. 194)  Such lack of support, in his report and in response to questioning, requires the exclusion of Thel's testimony regarding Defpa's consent rights. *See* FED. R. CIV. P. 26(a)(2)(B)(i) (West 2011 Rev. ed.) (any expert report must contain "a complete statement of all opinions the witness with express *and the basis and reasons for them*"); FED. R. CIV. P. 37(c)(1) (providing that failure of disclosure pursuant to FED. R. CIV. P. 26(a) may result in preclusion of evidence at trial).

**B.     Thel's Conclusions Rest Solely on *Ipse Dixit***

"For a court to fairly evaluate an expert's report, the expert must explain how and why he reached his conclusion, and the courts do not have to credit opinion evidence connected to data only by the *ipse dixit* of the expert." *Gateway Equip. Corp v. U.S.*, 247 F. Supp. 2d 299 (W.D.N.Y. 2003) at 309 (internal quotations omitted) (excluding as "utterly unhelpful" expert testimony based on *ipse dixit* conclusions).   After setting aside Thel's reliance on Powers' opinions, the only remaining basis for Thel's opinions as to Depfa's consent rights are impermissible *ipse dixit*.

Thel stated that he initially assumed the truth of Powers' opinions as to whether the execution of the Second Supplemental Indenture and the Lloyds SBPA violated Depfa's rights under its SBPA.  (Thel Tr. at 57:23-58:9)  He then took a step further and stated that he agreed with Powers' opinions – the conclusions if not the underlying rationale.  (Thel Tr. at 60:5-20) When asked why he agreed with Powers' opinion, Thel responded "A:  Because I agree.  Q: What is the basis for your agreement?  A:  Reading it and agreeing with it."  (Thel Tr. at 56:17-22)  Such rationale is *ipse dixit* – it does not include *any* facts or data on which the opinion is based, much less "sufficient" facts or data required by Rule 702 to demonstrate that the proffered opinion is reliable.  *See* FED. R. EVID. 702(1).

Without any basis for the adoption of Powers' conclusions, other than Thel's say-so, and no other basis or reason for Thel to opine as to the underlying substance of such conclusions, Thel should be precluded from testifying as to whether or not Depfa's consent was required prior to entry into the Second Supplemental Indenture or the Depfa SBPA.

**C.     Thel's Opinions as to the Proper Interpretation of Agreements is Impermissible[5]**

The legal conclusions offered by Thel as to the proper interpretation of contracts are no more appropriate because they do not "assist the trier of fact to understand the evidence or to determine a fact in issue," and should, therefore, be excluded. *Daubert*, 509 U.S. at 580; FED. R. EVID. 702. *See also Solomon v. U.S. Trust Co.*, 2004 WL 882066, *3 (Cal. App. 2d April 26, 2004) ("Thel's opinions as to the application of the law to the facts of this case were properly excluded by the trial court.").

Rather than offer constructive opinions as to the custom and practice in the industry regarding opinion letters – knowledge which Thel does not possess – Thel's report merely applies his version of the law to the facts of this case to offer an opinion on the propriety of the parties' conduct.  Thel opines that "JPMorgan did not receive the required opinion of counsel with respect to the Second Supplemental Indenture." (Trial Ex. 194 at 5, ¶ 16; *see also id.* at ¶¶ 17, 20, 21)  The opinions offered during Thel's deposition are similarly problematic.  He testifies that a counsel opinion letter from counsel to ALL "does not purport to be the Opinion called for [by the Indenture]" (Thel Tr. at 115:20-116:24), that certain opinion letters do not contain the language specified in the Indenture (Thel Tr. at 135:22-25), and that there "were no opinions of Counsel that invited the Trustee to do what he did." (Thel Tr. at 145:18-146:11)  Thel's *entire* opinion is based on his comparison of the opinion letters to § 7.3(B) of the Indenture and conclusion that the former do not satisfy the latter.  (Thel Tr. at 149:1-15)

---

[5]     Because Lloyds and BNY Mellon disagree as to whether the Trustee could rely on certain documents other than counsel opinion letters (such as, for example, payment directions from ALL), Lloyds joins Section II.C of this motion only to the extent it argues that (A) the counsel opinion letters received by the Trustee in 2006 were valid and conformed to the Indenture; (B) Thel improperly gives legal opinions on the validity of the opinion letters; and (C) Thel is not qualified to give an opinion on their validity.  Lloyds does not join Footnote 6 below.

Thel's opinions impermissibly invade the role of the Court as trier of fact and law and should be excluded.   The law makes clear that an expert may not testify as to the legal construction of contracts or whether acts or documents conform to the contract's requirements. *See Marx & Co.*, 550 F.2d at 510; *Am. Home Assurance Co.*, 462 F. Supp. 2d at 449; *Media Sport & Arts*, 1999 U.S. Dist. LEXIS 16035, at *9; *Luizzi v. Pro Transport, Inc.*, 2011 WL 1655567, at *2-3 (E.D.N.Y. 2011).   As the California Court of Appeal noted in affirming the exclusion of Thel's testimony in another matter, "the calling of lawyers as expert witnesses to give opinions as to the application of the law to particular facts usurps the duty of the trial court to instruct the jury on the law as applicable to the facts, and results in no more than a modern day 'trial by oath' in which the side producing the greater number of lawyers able to opine in their favor wins." *Solomon*, 2004 WL 882066 at *3.

While an expert witness may properly testify as to custom and practice in an industry, or the understood meaning or use of technical terms within an industry, Thel's report goes well beyond that.  Rather than offer industry testimony, Thel is simply reading the Indenture and the opinion letters and expressing his opinion as to their conformity.[6]  To the extent Thel even suggested at his deposition that his opinions were based on industry understanding of the term "Indenture" as used in opinion letters – *i.e.*, Thel's testimony that although the Indenture itself was defined to include all supplements, it was impossible to read counsel's use of the term "Indenture" in the same manner (Thel Tr. 117-120) – he has no basis for that opinion.  Nothing in his report or testimony suggests that he has experience either with how counsel use the term "Indenture" in opinion letters, or how Trustees and other trust industry personnel understand the

---

[6]       The only opinion in Thel's report as to custom and practice is his statement disagreeing with something that the Trustees' expert, Robert Landau never said, *i.e.*, that "under … custom and practice in the corporate trust industry, the Trustee was entitled to rely upon any documents it receives without making any inquiry or investigation into the matters covered in those documents."  (Trial Ex. 194 ¶ 18.)

term.[7]  Even if Thel did have sufficient experience, neither his report nor his testimony explain *how* that experience leads to his conclusion as to the use of the term in *this case*, other than simply by his own say-so.  But "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *Joiner*, 522 U.S. at 146.

## CONCLUSION

For the foregoing reasons, the Court should exclude from the trial of this matter any testimony or opinions by Depfa's experts Joel Powers and Steven Thel.

Dated:  October 31, 2011
        New York, New York

Respectfully submitted,

By: _____
    Judith A. Archer
    Sarah E. O'Connell
    FULBRIGHT & JAWORSKI L.L.P.
    666 Fifth Avenue
    New York, NY 10103
    Tel.:  (212) 318-3000
    Fax:  (212) 318-3400

    *Attorneys for Plaintiff*
    *The Bank of New York Mellon Trust Company, N.A.*

---

[7]      While Thel testified that in his time at the law firm of Kilpatrick & Cody (25 years ago) he participated in reviewing or drafting something on the order of 50-100 opinions (Thel. Tr. 87:17-22), he did not testify that any of those involved indentures; he stated generally that he only dealt in total with 2-4 indentures.  (Thel Tr. 20:25-21:6.) He also testified that nothing from that experience was "informing these opinions."  (Thel Tr. 301:2-12).  His sole experience advising on counsel letters since then appears to have been one appearance in an SEC-related matter, but nothing in connection with a bond issuance.  (Thel Tr. 188:17-189:10.)  Thel has never worked in a corporate trust department, served as an indenture trustee, or represented an indenture trustee.  (Thel Tr. 145:12-14; 276:18-277:5.)