UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

THE BANK OF NEW YORK MELLON TRUST
COMPANY, N.A.,

                Plaintiff-Counterclaim Defendant,

   -against-

DEPFA BANK PLC and LLOYDS TSB BANK PLC,

            Defendants-Counterclaimants.

DEPFA BANK PLC,

            Third-Party Plaintiff,

   -against-

ACCESS TO LOANS FOR LEARNING
STUDENT LOAN CORPORATION and
JPMORGAN CHASE BANK, N.A.,

           Third-Party Defendants.

LLOYDS TSB BANK PLC,

           Third-Party Plaintiff,

   -against-

ACCESS TO LOANS FOR LEARNING
STUDENT LOAN CORPORATION,

           Third-Party Defendant.

Case No.: 10-CV-4424 (JPO) (AJP)

## THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.'S OPPOSITION TO DEPFA BANK PLC'S MOTION *IN LIMINE* TO EXCLUDE CERTAIN EXPERT TESTIMONY

Judith A. Archer
Sarah E. O'Connell
Fulbright & Jaworski, LLP
666 Fifth Avenue
New York, New York 10103
(212) 318-3000
*Attorneys for the Bank of New York Mellon Trust Company, N.A.*

55756924.2

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT .......................................................................................................................... 2

I.    ROBERT LANDAU'S TESTIMONY ON INDUSTRY CUSTOM AND
PRACTICE IS ADMISSIBLE AND PROPER .............................................................. 2

    A.    Expert Testimony on Industry Custom, Practice and Usage is Proper ................... 5

    B.    Landau is not Purporting to Testify as to Depfa's Actual Intent ......................... 11

II.    JEFFREY BALIBAN'S TESTIMONY IS PROPER AND ADMISSIBLE
REBUTTAL TESTIMONY ........................................................................................... 13

    A.    Baliban Is Qualified To Render the Opinions He Proffers ................................... 14

    B.    Baliban's Testimony Does Not Constitute Legal Conclusions  and Is
Admissible ........................................................................................................... 17

    C.    Baliban's Testimony is Helpful to the Trier of Fact ............................................ 19

CONCLUSION ..................................................................................................................... 23

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's,*
  136 F.3d 82 (2d Cir. 1998) .................................................................5

*Arista Records LLC v. Lime Group LLC,*
  2011 U.S. Dist. LEXIS 47416 (S.D.N.Y. May 2, 2011) ...................................22

*Becker v. U.S. Bank Nat'l Ass'n,*
  2011 WL 3875575 (E.D. Pa. Sept. 2, 2011).........................................3, 6, 10

*In re Blech Sec. Litig.,*
  2003 WL 1610775 (S.D.N.Y. 2003) ...............................................5, 8, 9, 11

*DeGregorio v. Metro-North R.R.,*
  2006 WL 3462554 (D. Conn. Nov. 1, 2006).............................................11

*Diamond v. Sokol,*
  2007 U.S. Dist. LEXIS 79775 (S.D.N.Y. Oct. 29, 2007)..................................19

*Ermolieff v. R.K.O. Radio Pictures, Inc.,*
  19 Cal. 2d 543 (1942) ....................................................................5

*F.D.I.C. v. Suna Assocs.,*
  80 F.3d 681 (2d Cir. 1996) ..............................................................20

*Faryniarz v. Nike, Inc.,*
  2002 WL 1968351 (S.D.N.Y. Aug. 23, 2002)............................................20

*Fiataruolo v. United States,*
  8 F.3d 930 (2d Cir. 1993) ...............................................................10

*First Nat'l State Bank v. Reliance Elec. Co.,*
  668 F.2d 725 (3d Cir. 1981) .............................................................11

*In re Fosamax Prods. Liab. Litig.,*
  645 F. Supp. 2d 164 (S.D.N.Y. 2009) .............................................8, 10, 14

*Gulino v. Bd. of Educ.,*
  2003 U.S. Dist. LEXIS 56 (S.D.N.Y. Jan. 3, 2003) .....................................19

*Hugo Boss Fashions, Inc. v. Fed. Ins. Co.,*
  252 F.3d 608 (2d Cir. 2001) .........................................................6, 13

-ii-

*Iacobelli Constr., Inc. v. County of Monroe,*
    32 F.3d 19 (2d Cir. 1994) ................................................................ 5, 6, 10

*Marmol v. Biro Mfg. Co.,*
    1997 U.S. Dist. LEXIS 21669 (E.D.N.Y. Jan. 27, 1997) .................................. 23

*Marx & Co. v. Diners' Club, Inc.,*
    550 F.2d 505 (2d Cir. 1977) ......................................................................... 5

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.,*
    643 F. Supp. 2d 482 (S.D.N.Y. 2009) ............................................................ 3

*Omni Berkshire Corp. v. Wells Fargo Bank, N.A.,*
    307 F. Supp. 2d 534 (S.D.N.Y. 2004) ......................................................... 13

*In re Pfizer Inc. Secs. Litig.,*
    2010 U.S. Dist. LEXIS 26927 (S.D.N.Y. Mar. 22, 2010) ............................. 19, 20

*Phillips v. Calhoun,*
    956 F.2d 949 (10th Cir. 1992) ...................................................................... 7

*Primavera Familienstiftung v. Askin,*
    130 F. Supp. 2d 450 (S.D.N.Y. 2001) ............................................................ 9

*Professional Consultants Ins. Co. v. Employers Reins. Co.,*
    2006 WL 751244 (D. Vt. 2006) .................................................................... 8

*S.W. v. City of New York,*
    2011 U.S. Dist. LEXIS 80833 (E.D.N.Y. July 25, 2011) ................................. 19

*Southern Pac. Trans. Co. v. Santa Fe Pac. Pipelines, Inc.,*
    88 Cal. Rptr. 2d 777 (Ct. App. 1999) ............................................................ 5

*SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC,*
    467 F.3d 107 (2d Cir. 2006) ......................................................................... 6

*St. Paul Mercury Ins. Co. v. Capital Sprinkler Inspection, Inc.,*
    627 F. Supp. 2d 1 (D.D.C. 2009) .................................................................. 6

*U.S. Underwriters Ins. Co. v. Zismopoulos,*
    2009 WL 6316251 (E.D.N.Y. 2009) ............................................................ 10

*U.S. v. Bilzerian,*
    926 F.2d 1285 (2d Cir. 1991) ....................................................................... 5

*U.S. v. Tejada,*
    956 F.2d 1256 (2d Cir.), *cert. denied*, 506 U.S. 841 (1992) ........................... 20

-iii-

*World Trade Ctr. Props., L.L.C. v. Hartford Fire Ins. Co.,*
    345 F.3d 154 (2d Cir. 2003) ................................................................................................5

## RULES AND STATUTES

Fed. R. Evid. 702 ..................................................................................................................14

1286315_1

Interpleader Plaintiff/Counterclaim Defendant The Bank of New York Mellon Trust Company, N.A. ("BNY Mellon") respectfully submits this Memorandum of Law in Opposition to the Motion *in Limine* of DEPFA Bank plc ("Depfa") to exclude certain expert testimony. Third Party Defendant JPMorgan Chase Bank, N.A. ("JPMC") joins in Point I of this Memorandum of Law.

## PRELIMINARY STATEMENT

Depfa seeks to preclude certain testimony offered by Robert Landau and the entirety of the testimony offered by Jeffrey Baliban, but does so by mischaracterizing their testimony and attributing opinions that they have not offered. Both witnesses proffer testimony that is proper, will assist the court, and should be admitted.

Mr. Landau, the author of the seminal book on the corporate trust industry with decades of experience in that industry, will testify regarding the custom and practice in the trust industry and the understanding of terms at issue in this case. Landau will also testify to the customary role of the Indenture Trustee in bond transactions. Depfa objects to Landau's testimony as purporting to offer improper legal opinions and opinions as to the intent of the parties. The testimony to which Depfa objects is not legal opinions but testimony regarding custom and usage in an industry, properly admitted to assist the Court in understanding the terms used in the Indenture and other documents. Nor does Landau purport to testify as to Depfa's actual intent; Landau merely opines on the fact that broad consent rights for a liquidity provider are unusual in the industry, and would have been made explicit. Landau's testimony is entirely proper and will assist the Court in understanding how relevant terms are used in the industry and the limited role of an Indenture Trustee.

Baliban, an economic expert with over thirty years of experience in analyzing business value issues and working to resolve complex commercial disputes, was proffered by BNY

Mellon to rebut the opinions of experts proffered by Depfa and Lloyds.  Depfa objects to Baliban's testimony in its entirety, arguing that he is unqualified, proffers legal conclusions, and his testimony will not assist the Court.  As an initial matter, Depfa's complaints about Baliban go well beyond his response to Depfa's expert to include the testimony of Lloyds' expert.  Because Depfa has no standing to object to testimony responding to Lloyds' expert, that portion of Depfa's motion must be denied on that basis alone.  Further, contrary to Depfa's assertions, Baliban's criticism that the other experts supplant ALL's real time judgment with their own *ex post* view is not an opinion as to the exercise of ALL's judgment but as to the failure of methodology of Depfa's and Lloyds' experts.  Baliban is well qualified to offer opinions as to the propriety of the methodology used by Depfa's expert.  Baliban's testimony does not involve the business judgment rule – he merely opines that ALL's real time judgment should be considered as a variable in any analysis.  Finally, Depfa's contention that Baliban's testimony will not assist the Court because he offers no independent calculation of damages flies in the face of every case where testimony of an expert whose sole purpose is to criticize the testimony of another expert is admitted, and the fact that Depfa's own expert offers no opinion as to damages. Baliban's testimony as to the flaws in methodology used by Depfa's expert is properly admitted to assist the Court.

## ARGUMENT

## I.    ROBERT LANDAU'S TESTIMONY ON INDUSTRY CUSTOM AND PRACTICE IS ADMISSIBLE AND PROPER

With respect to Robert Landau, Depfa does not seek his exclusion altogether.  Rather (as with Lloyds' witness Robert Pope), Depfa seeks only to limit his testimony based on what it perceives as potentially improper opinions expressed in his report (and only his report – Depfa

does not cite any testimony from his deposition).[1]  This motion should be denied.  While Depfa's

statements of the law regarding the limits of permissible expert opinions are unobjectionable in

the abstract, its error lies in perceiving that any proffered testimony by Landau will transgress

those limits.  Landau – a man with decades of experience in the corporate trust industry and the

author of the leading text on that industry – will testify as to custom and practice in the trust

industry, including common understanding of terms that are at issue in the relevant contracts and

opinions in this matter.[2]  Indeed, the United States District Court for the Eastern District of

Pennsylvania recently relied upon Mr. Landau's testimony regarding industry custom and

practice to construe an ambiguous indenture and to determine that the Trustee had fulfilled his

fiduciary duties.  *See Becker v. U.S. Bank Nat'l Ass'n*, 2011 WL 3875575, at *5, *7, *9 (E.D. Pa.

Sept. 2, 2011). BNY Mellon and JPMC are confident that Landau's testimony will be similarly

helpful to this Court as trier of fact and, therefore, admissible.

Initially, it should be noted that because Depfa seeks only to limit Landau's testimony in

this bench trial, its objections are particularly ill-suited to resolution *in limine*.  Depfa plainly

concedes Landau's qualifications and does not dispute that he has legitimate testimony to offer,

it contends only that some of his proposed testimony may "cross the line" into improper territory.

As discussed below, Depfa's perception is mistaken, but in any case that line-drawing by this

Court is a determination better made in the context of the trial and of Landau's actual testimony.[3]

It is especially problematic to attempt to do so, as Depfa does, based solely on his report, which

---

[1]      Landau's report (hereinafter "Landau Rep."),  is available in full as Trial Ex. 186.

[2]      Landau is also expected to testify about the customary (and limited) role of the Indenture Trustee
in bond transactions such as the ones at issue here – testimony that Depfa makes no complaint about in its motion.

[3]      This is in contrast to Depfa's proffered experts, Steven Thel and Joel Powers, who (as argued in
BNY Mellon's motion *in limine*) simply have *no* legitimate expert testimony to offer this Court. *See In re Methyl
Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 643 F. Supp. 2d 482, 492 (S.D.N.Y. 2009) (exclusion *in limine*
is proper "only when the evidence is clearly inadmissible on all potential grounds").

obviously cannot (and is not intended to) express his opinions in the same level of detail that he can at trial.  Further, it is even more improper (as Depfa does in its brief) to wrench statements in that report out of context – even going so far as to eliminate all of the sentences from quoted paragraphs that make clear that Mr. Landau's opinion is a permissible discussion of industry custom and practice.

Mr. Landau has extensive experience testifying as an expert.  He is well aware of the limits of such testimony, as he clearly demonstrated at his deposition.  (*See, e.g.*, Landau Tr. at 12:7-11 ("I am here to testify as to what is custom and practice in the industry in understanding the terms of an Indenture.  I'm not here in a legal capacity to indicate how a judge would decide that interpretation."))[4]  Counsel is cognizant of the limitations as well, and all parties involved will obviously follow the Court's instructions carefully.  There is simply no danger here that Landau's testimony will waste this Court's time with improper testimony so as to make resolution *in limine* necessary or even desirable.  For this reason alone, the Court should deny Depfa's motion.

Turning to the merits of Depfa's motion, Depfa claims to glean from the Landau Report two impermissible areas of potential testimony: (1) that Landau is purporting to express "legal conclusions" (Depfa Mem. Law at 3), and (2) that Landau is purporting to express an opinion as to "the intent of the parties" (*id.* at 8).  While Depfa is correct that expert testimony as to legal conclusions or actual state of mind of a party is not permissible, it is incorrect to suggest that Landau intends to so testify or that any such impermissible testimony is foreshadowed in his report.

---

[4]      Cited excerpts of the deposition of Robert I. Landau dated September 21, 2011 are annexed to the Declaration of Judith A. Archer dated November 14, 2011 ("Archer Decl.") as Exhibit 1.

A.    **Expert Testimony on Industry Custom, Practice and Usage is Proper**

While it is true that case law provides that an expert may not opine baldly as to the proper

interpretation of a contract or other documents, it is equally true that these same authorities

recognize that expert evidence regarding customs, practices and usages in an industry are very

much admissible – both for purposes of assisting in the interpretation of written documents and

for purposes of assessing the conduct of parties against the customary practice in the industry.

*See, e.g., Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 508-09 (2d Cir. 1977).

It is well-established that custom and usage in the industry may be used to illuminate the

meanings of contractual terms – under Second Circuit precedent the Court's initial determination

of contractual ambiguity must be made in light of "the customs, practices, usages and

terminology as generally understood in the particular trade or business." *Alexander & Alexander*

*Servs., Inc. v. These Certain Underwriters at Lloyd's*, 136 F.3d 82, 86 (2d Cir. 1998); *see also*

*World Trade Ctr. Props., L.L.C. v. Hartford Fire Ins. Co.*, 345 F.3d 154, 185-86 (2d Cir. 2003)

(rejecting argument that custom and usage should not have been considered prior to

determination of ambiguity).  California law is in accord. *See Southern Pac. Trans. Co. v. Santa*

*Fe Pac. Pipelines, Inc.*, 88 Cal. Rptr. 2d 777, 785 (Ct. App. 1999); *Ermolieff v. R.K.O. Radio*

*Pictures, Inc.*, 19 Cal. 2d 543, 550 (1942).

Custom and usage is particularly important in an industry where terms may be used in a

specialized manner rather than ordinary meaning.  *See Iacobelli Constr., Inc. v. County of*

*Monroe*, 32 F.3d 19, 25 (2d Cir. 1994); *see also In re Blech Sec. Litig.*, 2003 WL 1610775, at

*19 (S.D.N.Y. 2003) ("'Particularly in complex cases involving the securities industry, expert

testimony may help a [factfinder] understand unfamiliar terms and concepts'") (quoting *U.S. v.*

*Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991)).  Where a custom and usage is shown, the parties

are assumed to have contracted or acted in accordance with that usage absent indications to the

contrary.  *See Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 617-18 (2d Cir. 2001);
*see also SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*, 467 F.3d 107, 124 (2d Cir.
2006) (evidence that the parties "did not follow a market custom and practice is relevant to
determining the parties' intent").

Expert testimony is admissible to prove such custom, practice and usage.  *See SR Int'l*,
467 F.3d at 132-34 (expert properly testified as to drafting practices in industry); *Iacobelli*, 32
F.3d at 25 (district court erred in excluding expert affidavits that "described industry practices
and customs, defined terms of art used in the industry, explained the approach by which
reasonably prudent contractors would interpret the contract documents, and enumerated the
conclusions such reasonably prudent contractors would reach"); *Becker*, 2011 WL 3875575, at
*5-7.  Indeed, it is often the preferred or even *only* way to do so.  *See St. Paul Mercury Ins. Co.
v. Capital Sprinkler Inspection, Inc.*, 627 F. Supp. 2d 1, 8-9 (D.D.C. 2009) (meaning of technical
term in contract required expert testimony). Depfa does not argue otherwise – in fact, it asserts
that the testimony of its own expert, Joel Powers, is proper precisely because of its purported
reliance on industry custom and practice.

Here, what Depfa complains of as "legal conclusions" will, in fact, be just this sort of
custom and practice testimony to assist the Court in interpreting the various contracts and other
key documents in this case.  For example, Depfa complains about statements from paragraphs 24
and 27 of the Landau Report – dealing with "amendments" vs. "supplements" – and claims that
these amount to "instruct[ion] … on what [Landau] believes is the proper construction of certain
contract provisions." (Depfa Mem. Law at 5)  Depfa's selective quotations of those paragraphs
deliberately omit the portions of those paragraphs that make clear that Landau is discussing how
the industry understands these key terms.  (*See, e.g.*, Landau Rep. at ¶ 24 ("The word

'amendment' is understood in the corporate trust industry to mean the addition of provisions which results in a change to the substantive rights of the parties."); *id.* at ¶ 27 ("Based on my knowledge of the corporate trust industry and words and phrases which have long standing meaning in that industry, the issuance of a new series of Bonds as provided for in the existing Indenture is not a modification of the Indenture, nor is it an amendment of that Indenture."))

The basis for Landau's opinion regarding the "amendment"/"supplement" issue becomes even clearer when Depfa's two selected paragraphs (or, rather, portions thereof) are placed in the context of the full discussion of this issue report, *i.e.*, Paragraphs 22-29. (*See, e.g.*, Landau Rep. at ¶ 22 (whether issuance of subsequent series of bonds constituted an "amendment" can be resolved by reference to the operative documents "and the commonly understood and applied meaning of the term 'Supplemental Indenture' as understood in the corporate trust industry"); *id.* at ¶ 23 (industry understanding of the term "supplemental" and common practice of using "supplemental indentures" to issue bond series); *id.* at ¶ 25 (industry understanding of "terms and conditions" of bonds); *id.* at ¶ 26 (industry practice re incorporation of amendments into segregated sections of supplemental indentures); *id.* at ¶ 28 (industry understanding of "equivalent" as meaning a side or letter agreement)) Mr. Landau's deposition testimony further makes clear that he is providing testimony regarding custom, practice and industry understanding as to the meaning and uses of these key terms. (*See, e.g.*, Landau Tr. at 126:11-16; 140:11-141:10)

Plainly, such testimony about industry usage and industry drafting practices is admissible. *See, e.g., Phillips v. Calhoun*, 956 F.2d 949, 952 (10th Cir. 1992) (experts with experiencing in drafting similar documents allowed to testify as to customary meaning and usage). Moreover, it is also permissible for Landau to refer to the use of these terms in the

contracts themselves and testify as to the factors that suggest to him that the parties used the terms consistent with (or different from) his understanding of standard usage. *See In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) (with respect to documents, expert allowed to "explain[ ] the regulatory context in which they were created, defin[e] any complex or specialized terminology, or drawing inferences that would not be apparent without the benefit of experience of specialized knowledge"); *Professional Consultants Ins. Co. v. Employers Reins. Co.*, 2006 WL 751244, at *21-22 (D. Vt. 2006) (expert could not opine on ultimate legal issue but could discuss contracts in light of custom and practices of industry); *cf. Blech*, 2003 WL 1610775, at *23 (expert could not testify that market manipulation occurred, but could "point to factors indicating to him that market manipulation occurred"). The portions of Landau's report cited by Depfa clearly fall within the scope of permissible testimony. It does not cross the line into opining directly on the proper interpretation of the contract terms, which as Landau recognized, will at all times remain the prerogative of the Court. (*See* Landau Tr. 12:3-13:5; 131:15-132:8)

As to those portions of the Landau Report discussing the several opinions of counsel blessing the 2006 Issuance and directions from the issuer to the trustee for payment, Depfa once again selectively quotes from the report, omitting in each case the statement that the Trustee's actions pursuant to those opinions' and directions were "in accordance with custom and practice in the corporate trust industry." (*See* Depfa Mem. Law at 5; Landau Rep. at ¶¶ 19-21) These reliance provisions are standard in trust indentures, and Landau can therefore testify as to how they are commonly understood in the industry and what obligations they are understood to impose, or not impose, upon trustees.

That is exactly the scope of Landau's expected testimony.  For example, with respect to directions from the issuer, he testified at this deposition that "[t]here are three tests to what a Trustee may accept in terms of direction from an Issuer, and this is pretty much universally understood in the industry.  And so, what I'm giving you is custom and practice in the industry." (Landau Tr. at 57:6-11; *see id.* 54:21-58:9 (describing the understood tests as to when the trustee may rely upon directions))  Landau also testified with respect to the opinions of counsel, for example, that as a matter of custom and practice a trustee need not personally "consult" with counsel in order to be protected by that opinion, because trustees expect that issuer counsel or bond counsel will issue an opinion with respect to the propriety of the transaction.  (*See id.* at 105:4-107:4)

Moreover, with respect to the opinions of counsel, Depfa via its rebuttal expert Steven Thel has raised an issue as to whether the opinions of counsel can actually be interpreted to opine on the consistency of the 2006 Issuance with the 2005 Issuance contracts – specifically, whether counsel's opining as to the consistency with the "Indenture" encompasses an opinion as to the consistency with the First Supplemental Indenture as well.  Landau will testify (as he did at his deposition) that the use of the term "Indenture" in the industry is always understood to include any operative amendments or supplements.  (*See* Landau Tr. at 99:16-18; 119:22-122:24)  Once again, testimony as to the industry understanding of terms is well within the scope of permissible expert evidence.

Experts can also testify as to industry practices and whether the parties' actions are consistent with that practice.  *See Blech*, 2003 WL 1610775, at *19 ("'[I]t is proper for an expert to testify as to the customs and standards of an industry, and to opine as to how a party's conduct measured up against such standards.'") (quoting *Primavera Familienstiftung v. Askin*, 130 F.

Supp. 2d 450, 529 (S.D.N.Y. 2001)); *U.S. Underwriters Ins. Co. v. Zismopoulos*, 2009 WL

6316251, at \*5 (E.D.N.Y. 2009) ("[P]roof of industry practice may be used to inform

reasonableness and establish a standard of care for that industry."). Thus, Landau can certainly

testify as to whether the Trustee's actions in accordance with payment directions from the issuer

comported with what is customary for a trustee. *See Becker*, 2011 WL 3875575, at \*9 (relying

on Landau's testimony regarding industry custom and trustee's reliance on advice of counsel to

hold that trustee did not breach fiduciary duty in making bond payments); *Fosamax*, 645 F.

Supp. 2d at 191 (expert's "assessment of the reasonableness of [defendant's] conduct in light of

her experience and her understanding of FDA regulations will be helpful to the jury").  And he

can also testify as to whether the Trustee's reliance upon the various opinions (written and oral)

and certifications that it obtained in connection with the 2006 Issuance was consistent with how

trustees would normally proceed.  (*See* Landau Tr. at 123:13-124:5 (Trustee could rely upon

opinion letters even if counsel had not reviewed the First Supplemental Indenture, based on

Landau's "understanding of how people in the industry believe conduct of the Trustee is

governed, based upon years and years of being involved with the industry and attorneys in the

industry."))

      While none of this testimony can directly establish the propriety or reasonableness of the

Trustee's conduct under the Indenture, it certainly is probative of it. *See Iacobelli*, 32 F.3d at 25

(experts should have been allowed to opine, based on industry custom and practice, how

reasonable contractors in industry would interpret the contract documents and "the conclusions

such reasonably prudent contractors would reach"); *Fiataruolo v. United States*, 8 F.3d 930, 942

(2d Cir. 1993) (expert's testimony that defendant's actions led expert to believe him to be

"responsible" under the tax code was admissible, because the opinion "was not a simple bald

assertion of the law"); *First Nat'l State Bank v. Reliance Elec. Co.*, 668 F.2d 725, 731 (3d Cir. 1981) (expert properly testified as to banking industry practice for purpose of establishing bank's good faith); *Blech*, 2003 WL 1610775, at *21 (expert could not testify whether broker's trades were proper but could testify "as to what ordinary broker activity entails and as to the customs and practices of the industry"); *id.* at *24 (expert could testify about "red flags" or absence thereof, as it would assist in evaluating defendant's scienter); *DeGregorio v. Metro-North R.R.*, 2006 WL 3462554, at *3 (D. Conn. Nov. 1, 2006) (while expert could not testify whether regulation was complied with, he could testify, based on his industry experience, as to what procedures should have been followed, including reference to regulations as needed).

In the end, of course, it is the Court that will determine what the Indenture requires; what obligations it imposes on, and protections it affords to the Trustee; and whether the various opinions and directions received, and the Trustee's actions in accordance therewith, comport with the Indenture's requirements.  But expert testimony as to the industry understanding of the key terms used in the contracts; the common understanding of the various reliance provisions; and the standard practice of trustees (and how the actions of the Trustee in this case match up to those customary practices) will surely assist the Court in reaching its determinations, and do not cross the line into impermissible "legal conclusions."

## B.   Landau is not Purporting to Testify as to Depfa's Actual Intent

Depfa's second basis for its motion is the claim that Landau "opines on Depfa's intent" with respect to the consent rights included in the Depfa SBPA.  (Depfa Mem. Law at 9)  Here, it must be said, Depfa is simply being disingenuous in its over-literal interpretation of Landau's report.  Depfa is correct, of course, that an expert cannot testify directly as to the subjective intent of another person – no witness, lay or expert, can do so.  But Landau does not intend to so testify, and no reasonable reading of his report suggests otherwise.

The allegedly offending passage from Landau's report deals with the lack of any expressly stated right in the documents related to the 2005 Issuance for Depfa to consent to the issuance of future series of bonds or to the terms of any subsequent liquidity facility.  Landau states, "If the right to consent to the issuance of a series of bonds was desired by the Liquidity Provider it had to be, and would have been, spelled out in the Indenture, the First Supplemental Indenture or the SBPA."  (Landau Rep. at ¶ 29)  Depfa seizes on the word "desired" to suggest that Landau is purporting to opine on the actual state of mind of Depfa (or more accurately, presumably, its representatives in the negotiations of the 2005 Issuance).

A reasonable reading of Landau's report, however, is that he is simply opining that in his experience the absence of a broad consent right in the documents suggests that the expressed intent of the parties was that Depfa would have no such right.  And at his deposition, he made this clear:

> Q.    In paragraph 29 of your report, you give the opinion that you would expect to see, spelled out explicitly in the Indenture, any right to consent to the issuance of an additional series of bonds. Is that opinion based on your experience?
>
> A.    Yes.
>
> Q.    How so?
>
> A.    Well, I've never seen an Indenture in which subsequent potential purchasers of bonds have to pass -- have to be agreed to by prior purchasers of bonds.
>
> * * *
>
> Q.    So, it would be unusual, in your experience, for an Issuer to grant that right to a liquidity provider?
>
> A.    It would be more than unusual. It is just highly unlikely that that would happen.

(Landau Tr. at 179:4-15, 180:6-11)  In fact, Landau testified that he had *never* seen such a right granted.  (*Id.* at 181:7-11)  And, thus, Landau testified that "based upon my knowledge of the industry…[i]f the consent has to be given, it has to be spelled out.  It's not the reverse." (*Id.* at 182:3-9)

Landau then, is clearly opining as to custom and practice in the industry – namely, that broad consent rights for a liquidity provider are unusual and would therefore typically be made explicit, not implicit.[5]  As previously discussed, testimony regarding such custom and practice is plainly admissible.  Indeed, the reason such practice is admissible is because the parties are presumed to know it and to follow it in the absence of indications to the contrary.  *See Hugo Boss*, 252 F.3d at 617-18; *Omni Berkshire Corp. v. Wells Fargo Bank, N.A.*, 307 F. Supp. 2d 534, 540 (S.D.N.Y. 2004) ("When a trade usage is widespread, there is a presumption that the parties intended its incorporation by implication, unless the contract language negates it.") (quotation omitted).   In that sense, one might say that it is testimony as to "intent," but it is a well-established aid to determining the objectively expressed intent of the parties to a contract, *not* (as Depfa would have it) an impermissible attempt to divine the subjective intent of one or more of those parties.[6]

## II.    JEFFREY BALIBAN'S TESTIMONY IS PROPER AND ADMISSIBLE REBUTTAL TESTIMONY

Depfa objects to Baliban's testimony in its entirety – although at least half of his testimony (and Depfa's objection) relates only to Jack Blumenthal, the expert retained by Lloyds

---

[5]    Depfa also cites to ¶ 35 of Landau's report, *see* Depfa Mem. Law at 9, but there Landau is even more explicit that what he is opining on is the "common practice in the securities industry that when the parties to a financing desire to maintain equal terms . . . for multiple issues, they will negotiate the inclusion of such equal terms as a condition to their participation."  (Landau Rep. at ¶ 35)

[6]    This type of testimony is, moreover, precisely what Depfa's own expert Joel Powers provides (and which Depfa cites as an example of proper testimony, *see* Depfa Mem. Law at 7) – the only difference being that, unlike Powers, Landau actually has a sufficient basis in his experience to form such an opinion.

– an objection to which Depfa does not have standing to make. Depfa's concerns fall into three categories, none of which justifies preclusion. First, Depfa claims that Baliban is not qualified to opine on the standard of care applicable to a trust administrator, but Baliban proffers no such opinions. Second, Depfa objects to the admissibility of alleged legal conclusions offered by Baliban, although none of the opinions rendered constitute legal conclusions. Finally, Depfa asserts that Baliban's testimony will not assist the trier of fact in part because he does not attempt to determine the propriety of ALL's judgment, the very same opinion as to which Depfa objects to Baliban's qualifications.

Rule 702 provides that, to be admissible, "[e]ssentially, the witness must be qualified as an expert, the testimony must be reliable, and the testimony must assist the trier of fact. *Fosamax*, 645 F. Supp. 2d at 172. Baliban's proposed testimony meets all three of these requirements and should be admitted in all respects.

A.      **Baliban Is Qualified To Render the Opinions He Proffers**

Baliban's proffered testimony, rebuttal to the opinions of the experts proffered by Depfa (and Lloyds), is squarely within the purview of his expertise. Baliban was asked to analyze the "key assumptions and methodologies" in the reports of the experts retained by Depfa and Lloyds. (Trial Ex. 193 at ¶ 13; Baliban Tr. at 46:15-47:6)[7] Baliban concludes, among other things, that Friedland and Blumenthal both supplant ALL's real time judgment with their own *ex-post* view of the timing and amounts of accruals that should have been made without offering any explanation as to why their judgment is superior to that of ALL or whether ALL's application is reasonable and appropriate, particularly in the areas of interest accrual and accrual of funds owed to the Department of Education. (Trial Ex. 193 at ¶¶ 30, 41-43) Baliban notes that both experts

---

[7]      Cited excerpts of the deposition of Jeffrey L. Baliban dated September 29, 2011 are annexed to the Archer Decl. as Exhibit 2.

consider the amounts in both the loan and revenue accounts to determine whether or not funds are available for redemptions. (*Id.* at ¶ 22)  Baliban also opines that the funds Friedland notes are "available" would drastically change if any redemptions were made. (Trial Ex. 193 at ¶ 19) Baliban also criticizes the methodology used by Blumenthal for the accrual of expenses. (*Id.* at ¶ 20)  These economic opinions are well within Baliban's expertise.

Baliban is a managing director with Navigant Consulting, Inc. with over thirty years of experience in analyzing business value issues and working to resolve complex commercial disputes. (Trial Ex. 193 at ¶ 2)  Baliban has provided expert testimony on business valuation, accounting, economics, and finance. (*Id.*)  He also spends considerable time valuing business operations, debt and equity investments, and other cash flow streams, including complex financial instruments, collateralized debt obligations and other securitizations. (*Id.*)  Baliban holds a B.S. in Accounting from Fairleigh Dickinson University and a MA in Economics from the University of Texas. (Trial Ex. 193 at ¶ 4)  He is a CPA and holds professional designations of Accredited in Business Valuation and Certified in Financial Forensics from the American Institute of Certified Public Accountants. (*Id.*)  These qualifications are more than adequate to support the reliability of Baliban's rebuttal to Friedland's (and Blumenthal's) expert reports. (*See id.* at ¶ 14 (describing scope of retention))

Depfa asserts that Baliban "repeatedly offers opinions regarding ALL's exercise of judgment as the Issuer." (Depfa Mem. Law at 10)  To the contrary, as Depfa itself outlines, Baliban criticizes Friedland (and Blumenthal) for their attempts to supplant ALL's real time judgment with their own *ex-post* view, especially since neither reached a conclusion as to the propriety of ALL's actions. (Trial Ex. 193 at ¶¶ 18, 43)  Such critique does not constitute an opinion as to ALL's exercise of judgment.

Baliban offers *no* opinion as to the propriety of what ALL did or did not do in its role as program administrator. (Baliban Tr. at 192:11-25 ("Q: Are you opining that ALL – that ALL's management practices with respect to set-asides or redemptions in this case did conform to the applicable standard of professional care for a Trust administrator? [Objection] A: I'm – I'll take the same position I think that Mr. Friedland and Mr. Blumenthal take, and that is, I'm not reaching a conclusion on that and I have not seen anything that leads me to believe – leads me to reach a conclusion one way or the other.")) In fact, Baliban specifically avoids opining on ALL's behavior. (Baliban Tr. at 253:10-20 ("Q: And are you opining that setting aside six months of bond interest at all times was a reasonable practice if that, indeed, was the practice? A: I am not opining that it was or was not reasonable. Q: And you're not opining that setting bond interests on a – or setting aside for bond interests on a period to date basis would be reasonable one way or the other? A: That's right, I'm not. I mean, it's certainly outside of the scope of what I was asked to do. *I was not asked to opine on ALL's behavior*." (emphasis added)) What he proffers instead is a critique of the experts retained by Depfa (and Lloyds) because they substitute their own judgment for that of ALL in reaching their conclusions, without reaching any opinions about the propriety of ALL's conduct or practices. (*See* Trial Ex. 193 at ¶¶ 18, 43; Friedland Tr. at 219:4-9; 235:2-16; Blumenthal Tr. at 188:2-8, 191:23-192:24)[8] Contrary to Depfa's contention, Baliban is more than adequately qualified to proffer opinions as to the flaws in methodology applied by Friedland (and Blumenthal), neither of which include opinions as to the standard of care applicable to a program administrator.

---

[8]     Cited excerpts of the depositions of Scott Friedland dated September 19, 2010 and Jack E. Blumenthal dated September 20, 2011, are annexed to the Archer Decl. as Exhibits 3 and 4, respectively.

**B.    Baliban's Testimony Does Not Constitute Legal Conclusions and Is Admissible**

Baliban offers testimony as to his analysis of how ALL appeared to determine cash flows, as well as how the analysis of Friedland (and Blumenthal) appears to differ from that. Depfa claims that Baliban proffers legal conclusions, particularly invoking the business judgment rule to claim that deference is due to ALL's decisions. (Depfa Mem. Law at 11)  To the contrary, as the examples provided by Depfa make clear, Baliban merely restates what, in his interpretation, ALL did in determining cash flows and accruals and what factors experts should consider in performing a damage calculation.  Such testimony is entirely proper.

Depfa objects to Baliban's "apparent belief that ALL's decisions should be accorded deference" (Depfa Mem. Law at 11), a statement whose description itself highlights the fact that it is not a legal conclusion.  An examination of the substance of the purportedly offending testimony offers further support.  In response to Depfa's question about whether Baliban was testifying that ALL's judgment should not be disturbed unless there had been a failure of due care, Baliban responded with his belief that ALL's "realtime judgment needs to be considered strongly." (Baliban Tr. at 186:23-188:8)  While excluded from Depfa's selective quotation, Depfa then asked Baliban what area of scientific, technical or other specialized knowledge he was drawing on to support this conclusion. (Baliban Tr. at 188:9-190:20)  In response Baliban stated that he was "drawing upon the application of the scientific method as is generally understood to economic, financial and accounting decisions," which would require him to consider whether other variables should be considered. (*Id.* ("you have to determine whether there was another reason whether or not another variable has to be considered in making your forecast of amounts that would be available under accounting rules or under financial economic theory to be available to be used to pay for bond redemption.  And if [Friedland] hasn't

considered – there's certain variables he hasn't considered, then I don't see how his -- his calculation could only be correct coincidentally.") Far from offering a legal conclusion, Baliban is appropriately filling the role of an expert – applying the scientific method and drawing conclusions based on that application.

Depfa further argues that certain portions of Baliban's testimony proffer conclusions as to whether ALL's judgment was exercised in a reasonable manner. Again, an examination of the full line of questions and answers, rather than Depfa's selective quotation, makes clear that the proffered testimony is an appropriate description of those factors Baliban believes are appropriately considered when forming a damage calculation – an appropriate subject of expert testimony.

> Q.  Well, is an expert required to copy the contemporary activities of a trust administrator when he believes they are wrong?
>
> A.  I think an expert is required to give due consideration in a matter like this to what was done by the parties at the time contemporaneously with the issues arising, even if he disagrees with the amounts that they used. Unless, in his or her opinion, he believes that the decisions that were made were made without due professional care or made incorrectly, improperly, irresponsibly or in an imprudent matter.
>
> Q.  Would you agree an expert is not required to copy the contemporary activities of a trust administrator when they are wrong?
>
> A.  When they are wrong is a difficult aspect of your question. When you say "when they are wrong," do you mean if I were to think that a lower or a higher amount of an accrual would have been more correct, that doesn't necessarily mean that what was actually accrued was wrong. I may just think it's less correct. But if I think that it was irresponsible or imprudent or certainly did not reflect professional due care in their work, and I reached that opinion, then I would think there would be, certainly, a correct way to. You know, I would come up with my own opinion of what I think should have been accrued.

Q.  So, when the damages expert reasonably believes that the trust administrator did something wrong at the time, then it is all right for the damages expert to make a different assumption from the trust administrator?

A.   A damages expert can make whatever assumption he or she wants.  And if I'm retained and am asked -- regardless of what was done at the time, I want you to reconstruct this and tell me what you think should have been done.  I can do that and I might come up with a different response than what was originally done.  But if I'm going to go into – then go into calculations to say, and as a result of my work, party A owes money to party B or party B is owed money by party – by some other party, that's a whole different thing.  Then I have to look at whether or not there is – there was some, you know, duty to apply due professional care or whether there was decisions made by the by the individual who originally made them were somehow inappropriate beyond just the fact that the dollar amount may disagree with mine.

(Baliban Tr. at 63:12-65:25 (objections omitted))  As the testimony makes clear, Baliban is not proffering legal opinions, but rather opinions as to the facts and data that should appropriately be considered by a damages expert based on his years of experience as such an expert.  Such testimony is entirely proper. *See Diamond v. Sokol*, 2007 U.S. Dist. LEXIS 79775, at \*2 (S.D.N.Y. Oct. 29, 2007) (admitting expert testimony offered not to inform the jury about underlying law but to opine on reasonableness of decisions, strength of underlying case and how jury would react to various claims); *Gulino v. Bd. of Educ.*, 2003 U.S. Dist. LEXIS 56, at \*8-9 (S.D.N.Y. Jan. 3, 2003) (denying motion *in limine* to exclude expert testimony because proffered opinions did not address strictly legal issues).

### C.    Baliban's Testimony is Helpful to the Trier of Fact

Baliban, like any rebuttal expert, proffers opinions as to what he views as the flaws in methodology in the Friedland (and Blumenthal) reports.  Such testimony is properly admitted to assist the trier of fact.  *See S.W. v. City of New York*, 2011 U.S. Dist. LEXIS 80833, at \*17 (E.D.N.Y. July 25, 2011) (denying motion to exclude rebuttal experts); *In re Pfizer Inc. Secs.*

*Litig.*, 2010 U.S. Dist. LEXIS 26927, at *17 (S.D.N.Y. Mar. 22, 2010) (admitting rebuttal expert testimony that did not provide individual analysis or conclusions regarding safety because opinions were relevant to weight that should be assigned to other expert's analysis); *Faryniarz v. Nike, Inc.*, 2002 WL 1968351, at *2 (S.D.N.Y. Aug. 23, 2002) (testimony as to problems with other experts' methodology "admissible as rebuttal"); *F.D.I.C. v. Suna Assocs.*, 80 F.3d 681, 687-88 (2d Cir. 1996) (affirming admissibility of expert testimony and noting that "[a] district court has wide discretion in determining whether to permit evidence on rebuttal." (quoting *U.S. v. Tejada*, 956 F.2d 1256, 1266 (2d Cir.), *cert. denied*, 506 U.S. 841 (1992)). Depfa's arguments as to why such testimony is unhelpful rest on the flawed proposition that an expert must come to some sort of a conclusion in order to assist the trier of fact. (Depfa Mem. Law at 13-15) To the contrary, expert testimony, like Baliban's, that exposes flaws in the opinions of other experts is properly admissible. *See In re Pfizer Inc. Sec. Litig.*, 2010 U.S. Dist. LEXIS 26927 at *17; *Faryniarz*, 2002 WL 1968351 at *2. Depfa argues that Baliban does not "attempt to determine the propriety of ALL's judgment." (Depfa Mem. Law at 13) Yet in arguing that Baliban is inadequately qualified, Depfa contrarily asserts that "Baliban repeatedly offers opinions regarding ALL's exercise of judgment." (*Id.*) Neither of these directly contradictory arguments is persuasive. As set forth more fully above, Baliban does not opine as to whether ALL's judgment was proper, rather, he specifically disclaims such an opinions. (*See* Baliban Tr. at 253:10-20)

Further, the fact that Baliban does not proffer a separate opinion as to the propriety of ALL's actions does not render his testimony unhelpful. Were that indeed the case, Depfa's own expert would similarly be disqualified. Friedland repeatedly asserts that he is (a) not proffering a damage calculation (Friedland Tr. at 159:15-24 ("Q: Do you intend to offer any opinion on

economic damages? A: I have not been asked to do that. Q: And you don't intend to, correct? A: No unless I'm asked to."); 169:7-11; 288:19-25 ("I have not attempted to perform a damage calculation, so I have – I offer no opinion as to damages")); and (b) not offering any opinion as to the propriety of ALL's actions (Friedland Tr. at 219:4-9; 235:2-16 ("I wasn't asked to make – have an opinion as to what reasonable judgments are for – for – for ALL to have made. So I don't have an opinion one way or the other.")). For Depfa to criticize Baliban for the same alleged failings is disingenuous, at best.[9]

Depfa further criticizes Baliban's alleged failure to "refute the substance of either expert." (Depfa Mem. Law at 13) The only examples Depfa provides as to such failure, involve Baliban's analysis of Blumenthal's report – the report of the expert retained by Lloyds. (*Id.* at 13-14) Notwithstanding Depfa's arguments, Baliban appropriately raises issues with the analysis performed by Friedland (and Blumenthal). Baliban argues that Friedland inappropriately combines the amounts on deposit on both the Revenue and Loan accounts in determining whether funds are available for redemption, although the SBPAs indicate that redemptions should be made from amounts on deposit in the "Revenue Fund." (Trial Ex. 193 at ¶¶ 22-24) Baliban similarly criticizes the methodology used by Friedland to determine the amounts that should have been reserved for payments to the Department of Education (Trial Ex. 193 at ¶ 37), and the methodology for accruing interest (*id.* at ¶ 41). (*See also* Baliban Tr. at 177:11-179:3) Further, as neither expert proffers a damage calculation as to BNY Mellon (or any other party),

---

[9]      Depfa similarly criticizes Baliban for his lack of experience determining how payments should be made under a Standby Purchase Agreement ("SBPA") or determine how principal or interest payments should be made on bonds. (Depfa Mem. Law at 13 n.4) While Friedland was involved in a single investigation relating to the reporting of transactions involving the securitization of student loans, which may have included an analysis of whether funds were available for redemption (Friedland Tr. at 37:6- 41:23) he, too, lacks any experience relating to SBPAs. (Friedland Tr. at 43:25-4)

Baliban could not have reached an alternative calculation. (*See* Friedland Tr. at 115:9-11, 159:20-24, 252:2-9; Blumenthal Tr. at 187:23-198:21).

Depfa cites to *Arista Records LLC v. Lime Group LLC* to support its proposition that because Baliban, in Depfa's words, does not offer "an actual opinion or conduct[] any independent analysis" his testimony should be excluded as unhelpful to the trier of fact. (Depfa Mem. Law at 15 (citing *Arista Records LLC*, 2011 U.S. Dist. LEXIS 47416 (S.D.N.Y. May 2, 2011)) Unlike Baliban, in *Arista Records* the expert at issue had been retained for the express purpose of "caluculat[ing] the appropriate level of damages in this case," (*id*. at *25) rather than to provide rebuttal testimony. The *Arista Records* expert proffered opinions regarding the declines in music industry sales and the cause of such declines without expertise in the relevant areas and merely uncritically reported what others said, without analysis of his own. *Id*. at *23-31. The court held that such testimony should be excluded because the expert was not applying his own economics expertise, rather, the opinion was only a summary of what other experts said, without application of his own expertise. *Id*. at *33-34. Unlike the expert at issue in *Arista Records*, Baliban is a *rebuttal* expert, retained specifically to point out limitations on the opinions proffered by Friedland (and Blumenthal). Further, what he offers is his own expertise and opinion as to what should properly be considered when calculating available funds under the waterfall provision of the indenture, and as to the failures of methodology of Lloyds' and Depfa's experts. In his own words, what Baliban is proffering is assistance in "understand[ing] what the potential limitations are or rebuttals are that Mr. Friedland and/or Mr. Blumenthal had said. In particular with Mr. Friedland he said there's money available for redemptions on all of the dates. That may or may not be a true statement. That's my rebuttal." (Baliban Tr. at 226:23-229:7) Such rebuttal testimony will assist the trier of fact and should be admitted in its entirety.

*See Marmol v. Biro Mfg. Co.*, 1997 U.S. Dist. LEXIS 21669 at *11 (E.D.N.Y. Jan. 27, 1997) ("Doubts about the usefulness of an expert's testimony, should be resolved in favor of admissibility.")

### CONCLUSION

For the foregoing reasons, the Court should deny Depfa's motion *in limine* in its entirety.

Dated: November 14, 2011
       New York, New York          Respectfully submitted,

By: _____
      Judith A. Archer
Sarah E. O'Connell
Fulbright & Jaworski, LLP
666 Fifth Avenue
New York, New York 10103
Tel.: (212) 318-3000
Fax: (212) 318-3400
jarcher@fulbright.com
soconnell@fulbright.com

*Attorneys for Plaintiff/Counterclaim Defendant*
*The Bank of New York Mellon Trust Company, N.A.*