UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., <br><br> Plaintiff, <br><br> v. <br><br> DEPFA BANK PLC and LLOYDS TSB BANK PLC, <br><br> Defendants. | No. 10 CV 4424 (JPO) (AJP) <br><br> **MEMORANDUM OF LAW OF DEFENDANT AND THIRD-PARTY PLAINTIFF LLOYDS TSB BANK PLC IN OPPOSITION TO MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY OF ROBERT DEAN POPE** |
| DEPFA BANK PLC, <br><br> Third-Party Plaintiff, <br><br> v. <br><br> ACCESS TO LOANS FOR LEARNING STUDENT LOAN CORPORATION and JPMORGAN CHASE BANK, N.A., <br><br> Third-Party Defendants. | |
| LLOYDS TSB BANK PLC, <br><br> Third-Party Plaintiff, <br><br> v. <br><br> ACCESS TO LOANS FOR LEARNING STUDENT LOAN CORPORATION, <br><br> Third-Party Defendant. | |

Robert I. Bodian
David L. Barres
Omar A. Khondker
MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO, P.C.
Chrysler Center
666 Third Avenue, 25th Floor
New York, New York 10017
(212) 935-3000
*Attorneys for Lloyds TSB Bank plc*

## TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................ ii

Preliminary Statement ............................................................................................. 1

Factual Background .................................................................................................. 2

Argument .................................................................................................................. 6

1.   Mr. Pope Has Properly Opined on the Meaning of Industry Terms Without
     Giving Legal Conclusions ................................................................................ 6

     a.   There are No Legal Conclusions in Mr. Pope's First Report. ................. 7

     b.   There are No Legal Conclusions in Mr. Pope's Rebuttal Report. .......... 10

     c.   Depfa's Comparison of the Pope and Powers Reports Demonstrates
          Why the Former is Admissible and the Latter is Not. ........................... 12

2.   Mr. Pope Has Not Given Improper Opinions on the Intent of the Parties with
     Regard to the Provisions at Issue .................................................................. 13

3.   If Depfa's Motion Is Granted, It Should Be Granted Only as to the Specific
     Portion of Mr. Pope's Opinion That the Court Deems Improper. ................... 15

Conclusion .............................................................................................................. 16

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amster v. River Capital Int'l Group LLC,*
    00 Civ. 9708, 2003 U.S. Dist. LEXIS 4619 (S.D.N.Y. Mar. 26, 2003) ................................15

*CMI-Trading, Inc. v. Quantum Air, Inc.,*
    98 F.3d 887, 890 (6th Cir. 1996) ....................................................................................6, 15

*FCCD Ltd. v. State St. Bank and Trust Co.,*
    No. 10 Civ. 1632 (DLC), 2011 WL 519228 (S.D.N.Y. Feb. 15, 2011) ...................7, 9, 13-14

*Highland Capital Mgmt., L.P. v. Schneider,*
    551 F. Supp. 2d 173, 180-181 (S.D.N.Y. 2008) ...................................................................10

*Iacobelli Constr., Inc. v. County of Monroe,*
    32 F.3d 19, 24-26 (2d Cir. 1994) ....................................................................6, 8, 9, 10, 13

*In re Fosamax Prods. Liab. Litig.,*
    645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009)...........................................................................15

*Kona Tech. Corp. v. Southern Pac. Transp. Co.,*
    225 F.3d 595, 611 (5th Cir. 2000) ........................................................................................6

*Marx & Co. v. Diners' Club, Inc.,*
    550 F.2d 505, 509-10, 512 (2d Cir. 1977) ...................................................................6, 9, 13

*Media Sport & Arts s.r.l. v. Kinney Shoe Corp.,*
    No. 95 CIV. 3901 (PKL), 1999 WL 946354 (S.D.N.Y. Oct. 19, 1999)...........................13, 14

*North Am. Specialty Ins. Co. v. Myers,*
    111 F.3d 1273, 1281 (6th Cir. 1997) ..................................................................................6, 7

*Nuvest, S.A. v. Gulf & W. Indus., Inc.,*
    649 F.2d 943, 950 (2d Cir. 1981).........................................................................................7

*Primavera Familienstifung v. Askin,*
    130 F. Supp. 2d 450, 528-29 (S.D.N.Y. 2001),
    *amended in part by* 137 F. Supp. 2d 438 (S.D.N.Y. 2001) ..................................................10

*Sheet Metal Workers, Int'l Ass'n, Local Union No. 24 v. Architectural Metal Works, Inc.,*
    259 F.3d 418, 424 n.4 (6th Cir. 2001) ..................................................................................9

*Villafane Elec. Corp. v. Reliance Ins. Co.,*
    No. 02 Civ. 2682 (DC), 2004 WL 385041 (S.D.N.Y. March 2, 2004) ....................................6

**Page(s)**

**Statutes and Rules**

Fed. R. Civ. P. 26(a)(2)(B)(ii) .................................................................................................... 8

Fed. R. Evid. 702 ......................................................................................................... 1, 2, 8, 15

## **Preliminary Statement**

Defendant and third-party plaintiff Lloyds TSB Bank plc ("Lloyds") respectfully submits this memorandum of law and the Declaration of Omar A. Khondker ("Khondker Decl.") in opposition to the motion *in limine* of DEPFA BANK plc ("Depfa"), under Federal Rule of Evidence ("FRE") 702, to exclude the expert testimony of Robert Dean Pope.

Lloyds engaged Mr. Pope to opine on the meaning of the term "parity" in the bond industry, and to rebut the opinions of Depfa's expert, Joel Powers, about the meaning of "amendment" in the industry. Unlike Mr. Powers – who blatantly and repeatedly gave legal opinions on whether ALL amended the Indenture or issued non-parity bonds – Mr. Pope carefully limited his opinions to the meaning of specialized, technical terms in the bond industry, and how they typically are used in the industry.

Mr. Pope's opinions are set forth in the Expert Report of Robert Dean Pope dated August 5, 2011 (the "First Report") and in the Rebuttal Expert Report of Robert Dean Pope dated August 30, 2011 (the "Rebuttal Report"). In his reports, he explains the standard industry meanings of "parity," "supplement," and "amendment." He does not attempt to construe the provisions of the governing contracts, or opine on the parties' legal rights and obligations. The vast majority of his opinions do not even refer to the transactions or parties involved in this case.

To the limited extent that Mr. Pope comments on the transactions at issue or any of the parties, it is for the purpose of comparing the relevant contract provisions to those prevailing in the industry, and to explain how the parties' use of those provisions comported with industry custom. These comments comprise only a small percentage of his reports. They were mostly made in response to Mr. Powers' improper opinions on the rights, obligations, and intent of the parties and the meaning of the contract provisions at issue.

Because Mr. Pope's reports are, and his testimony will be, in accordance with FRE 702, Depfa's motion should be denied.

### **Factual Background**

The facts are fully presented in the Pretrial Memorandum of Law of Defendant and Third-Party Plaintiff Lloyds TSB Bank plc, dated October 31, 2011. Only the facts relevant to this motion are summarized here. All capitalized terms have the same definitions as in the pretrial memorandum.

In this action, Depfa alleges that the Indenture was amended, without its required consent, through (a) entry into the Second Supplemental Indenture and Lloyds SBPA, and (b) the issuance of Senior Bonds not in parity with Depfa's bonds. Depfa claims the bonds are not in parity because its bonds have a semi-annual, ten-year redemption schedule, while Lloyds' bonds have a quarterly, five-year schedule. All parties apparently agree that the meaning of "parity" in the bond industry is an issue in this case. Lloyds, Depfa, and BNY each have submitted expert reports on this subject. (Trial Exs. 186, 187, 189, 192.) [1]

Lloyds' expert is Robert Dean Pope, a partner in the Public Finance Section of Hunton & Williams with 37 years of experience as a bond lawyer. (*See* Declaration of Scott M. Berman in Support of Depfa Bank plc's Motion *in Limine* to Exclude Certain Expert Testimony ("Berman Decl."), Ex. A, p. 1.) Mr. Pope has worked on over 1,000 bond issues and has drafted many indentures and credit enhancements, including SBPA's. (*Id.*) He has extensive experience teaching, lecturing, giving speeches, and publishing on bond law and practice. (*Id.* at 2, A-1 to A-6.)

---

[1] All cited trial exhibits are located in the Trial Exhibit Binders that were submitted to the Court on October 31, 2011. Cited deposition testimony is attached to the Khondker Declaration.

In his First Report, Mr. Pope described his experience and qualifications and then summarized the relevant factual background.  (*Id.* at 1-7.)  In his "Conclusions and Opinions" section, he gave a very brief summary of his opinions.  (*Id.* at 7.)  He then presents his opinions in detail in two parts.

Part I of his First Report is entitled "The Meaning of Parity in the Bond Industry." It is divided into two subsections.  The first – entitled "What Is Parity?" – explains the definition of "parity" in the bond industry.  It is a security concept meaning that multiple series of bonds are secured as to payment by a common claim, at the same level of priority, against the collateral granted by the borrower.  (*Id.* at 7-8.)  The second subsection – entitled "The Practical Realities Reflected in Parity" – explains the economic and practical reasons why bonds in parity provide the bondholders with an equal priority of security interest, while leaving the issuer free to issue bonds at whatever time and on whatever payment terms it chooses.  (*Id.* at 8-9.)  Part I discusses industry custom, practice, and terminology without once mentioning any of the ALL Series V transactions, the parties thereto, or this action.

Part II of his First Report is entitled "Use of the Term 'Parity' in the Indenture Is Consistent with Industry Practice."  In this part, Mr. Pope compares the parity clauses in the Indenture to those in hundreds of other indentures that he has seen, and opines that the parties used standard industry language concerning parity.  (*Id.* at pp. 10-11.)  In the penultimate paragraph of his First Report, Mr. Pope factually recounts the parties' understanding of the concept of parity as described by them in their depositions, and which is consistent with the prevailing industry meaning.  (*Id.* at p. 10.)

On August 5, 2011, Depfa served the expert report of Mr. Powers, who was engaged to opine on whether Depfa's consent right applied to the Second Supplemental

Indenture and Lloyds SBPA, and whether the Depfa bonds are on a parity with the Lloyds bonds. (Berman Decl., Ex. G, p. 1.)  In his report, Mr. Powers opined that:

- "[Depfa's] consent was required before new bonds could be issued."  (Trial Ex. 189, p. 4.)

- "[C]ertain provisions of the Second Supplemental Indenture concerning payments to Lloyds under the Lloyds SBPA constituted an 'amendment' or 'modification' of the Indenture. . . . Accordingly, Depfa's prior written consent was required for these independent reasons as well."  (*Id.* at 5.)

- "Depfa's bonds and Lloyds' bonds are not in 'parity.'"  (*Id.*)

- "Given that ALL and the Trustee agreed to an SBPA that did not expressly exclude Depfa's right of consent to the issuance of additional bonds, I believe that Depfa's consent was required for a supplemental indenture that modifies the original indenture through the issuance of additional bonds."  (*Id.* at 9.)

- "In my opinion, giving Lloyds a priority in repayment ahead of Depfa in the waterfall likewise constituted an amendment that required Depfa's consent."  (*Id.* at 12.)

- "Because Lloyds received more than its ratable share of pledged collateral to repay its bonds' principal and ALL did not retain within the trust amounts to pay Depfa its ratable share, Depfa's bond [sic] and Lloyds' bonds were not on a parity."  (*Id.* at 19.)

These are all legal conclusions, which Lloyds needed to have Mr. Pope rebut.

Mr. Pope's Rebuttal Report was divided into two major parts.  Part I is entitled "Mr. Powers' Conclusions Regarding Consent Rights."  (Berman Decl. Ex. B.)  This part is divided into three subsections.  The first subsection is entitled "Industry practice routinely distinguishes between Amending Addenda and Additional Bonds Addenda."  This subsection explains how industry practice routinely distinguishes between addenda to an indenture that provide for the issuance of additional bonds, and those that amend pre-existing provisions of the

4

indenture.  Although the terminology sometimes varies, the result is virtually always the same: the liquidity provider retains the right to veto only substantive changes to the indenture, and not issuances of additional bonds.  (*Id.* at 1-3.)  Contrary to Mr. Powers' statements, there is no standard practice of expressly carving out a consent right to additional bonds, and a supplemental indenture generally does not change any terms of the waterfall of an indenture.  (*Id.* at 2-3.)  This subsection does not mention any transaction or party involved in this case.

In the next subsection, Mr. Pope opined that the use of the terms "supplement" and "amend" in the governing contracts, and the parties' conduct, was consistent with the standard industry practice of distinguishing between additional bonds addenda and amending addenda, and of limiting the liquidity provider's consent right to the latter.  (*Id.* at 3-5.)  Then, in the last subsection, Mr. Pope further opined that incorporation of redemption provisions into an indenture waterfall is routine practice in the bond industry, and is not an "amendment" of the indenture as Mr. Powers believes.  (*Id.* at 5-6.)

Part II of Mr. Pope's Rebuttal Report is entitled "Mr. Powers' Conclusions Regarding the Common Concept of Parity for Multiple Series of Bonds."  This part is divided into two subsections.  The first subsection – entitled "Mr. Powers' description of the concept of parity is inconsistent with industry practice" – explains how Mr. Powers' opinion about "parity" (including alleged ratable payment of principal during pre-acceleration debt service) is contrary to industry practice and usage, and improperly would force trustees to ignore the payment provisions of outstanding bonds.  (*Id.* at 6-8.)  This subsection does not mention any transaction or party involved in this case.

In the second subsection – entitled "Mr. Powers' assertion that the Depfa Bonds and the Lloyds Bonds are not secured on a parity basis is inconsistent with the common meaning

5

of parity and its standard implementation in bond financings" – Mr. Pope very briefly refutes Mr. Powers' opinion that the banks' bonds are not in parity. (*Id.* at 8.) Mr. Pope opines that implementation of parity in the industry does not cause issuers or trustees to deviate from the stated payment terms of bond documents, in the absence of acceleration. (*Id.*)

<u>**Argument**</u>

Experts may not testify on the legal effect of a contract. *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 509-10, 512 (2d Cir. 1977). Nor may they testify about the parties' contractual intent, where it would be the equivalent of testifying about the legal effect of a contract. *CMI-Trading, Inc. v. Quantum Air, Inc.*, 98 F.3d 887, 890 (6th Cir. 1996). As explained below, Mr. Pope has permissibly opined on the meaning of technical terms of art, and on how their usage by the parties in their contracts comported with industry practice.

**1.    Mr. Pope Has Properly Opined on the Meaning of**
**<u>Industry Terms Without Giving Legal Conclusions.</u>**

Experts are permitted to opine on the meaning of technical terms in a contract. *See Iacobelli Constr., Inc. v. County of Monroe*, 32 F.3d 19, 24-26 (2d Cir. 1994); *Villafane Elec. Corp. v. Reliance Ins. Co.*, No. 02 Civ. 2682 (DC), 2004 WL 385041, at *3 (S.D.N.Y. March 2, 2004); *see also Kona Tech. Corp. v. Southern Pac. Transp. Co.*, 225 F.3d 595, 611 (5th Cir. 2000) (it was "prudent" of trial court to rely on experts for explanation of technical meaning of industry terms); *North Am. Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1281 (6th Cir. 1997) (expert opinion testimony is admissible "to clarify or define terms of art, science, or trade.").

In *Iacobelli*, the district court barred admission of expert affidavits, which supported a motion for summary judgment, for failing to set forth specific facts. 32 F.3d at 25. The Second Circuit reversed, and held that the affidavits were admissible because they

6

"described industry practices and customs, defined terms of art used in the industry, explained the approach by which reasonably prudent contractors would interpret the contract documents, and enumerated the conclusions such reasonably prudent contractors would reach." *Id.*

Additionally, experts have been permitted to opine on how industry-specific terms are used, and whether they are commonly used in industry contracts. *See FCCD Ltd. v. State St. Bank and Trust Co.*, No. 10 Civ. 1632 (DLC), 2011 WL 519228, at *5-6 (S.D.N.Y. Feb. 15, 2011); *see also Nuvest, S.A. v. Gulf & W. Indus., Inc.,* 649 F.2d 943, 950 (2d Cir. 1981) (affirming admission of expert testimony regarding whether specific warranties sought by party were normal or customary).

In *FCCD Ltd.*, the Court ruled that it was appropriate to consider, as evidence of custom and usage, expert declarations on "standard industry practice in structuring intercreditor agreements," the "standard division of risk," whether certain provisions at issue are "commonly found" in such agreements, and whether these provisions are "meant to reflect the division of loss." 2011 WL 519228, at *5. The Court further held that the experts' "opinions as to how risk is typically 'allocated' in change of control provisions aids in the interpretation of the language at issue here and will be considered." *Id.* at *6.

Applying the above principles, all of Mr. Pope's expert opinions are admissible.

a.   **There are No Legal Conclusions in Mr. Pope's First Report.**

Depfa cites three places in the First Report (on Pages 4, 7, 10) where Mr. Pope allegedly offered legal conclusions. (Depfa's Memorandum of Law in Support of Motion in Limine ("Depfa's Memorandum"), p. 6.) On Page 4, Mr. Pope notes that the Indenture specifies the limited circumstances under which bonds are not to be paid on schedule. That comment,

however, is part of the statement of the facts Mr. Pope considered in rendering his expert

opinions. (*See* Berman Decl., Ex. A, p. 4.)  Mr. Pope recounted the key terms of the contracts to

demonstrate that his opinions are "based upon sufficient facts" as required by FRE 702, and to

disclose "the facts or data considered" in forming his opinions as required by FRCP

26(a)(2)(B)(ii). (*See id.* at 3-7.)  Depfa may not like the language of these contracts, but these

are facts, not Mr. Pope's opinion. *See Iacobelli*, 32 F.3d at 25 (it is appropriate for experts to

"explain in detail which documents were reviewed . . . and the general bases for their opinions").

Depfa accuses Mr. Pope, on Page 7 of his First Report, of trying to cloak a legal

conclusion with the talismanic phrase "industry practice."  Mr. Pope states that "in the absence

of an acceleration of all parity debt, it is normal industry practice for different series of bonds to

have different interest rates, payment schedules, and redemption provisions." (Berman Decl.,

Ex. A, p. 7.)  Here, Mr. Pope does not opine about whether it is lawful for different series of

bonds to have different payment terms.  Instead, he gives his expert opinion on standard industry

practice, based on his experience that includes over 1,000 bond issues, and after having seen

many transactions in which different series of parity bonds had different payment terms. (*See id.*

at 7.)

In its entirety, Part I of Mr. Pope's First Report is devoted to explaining the

meaning of a term of art, "parity," according to its usage in the bond industry.  Part I contains no

legal conclusions about how to construe any of the provisions in the contracts governing the

transaction at issue, or about the rights or obligations of any of the parties.  Part I does not even

mention any of the contracts or parties.

In Part II, Mr. Pope opines that the appearance and usage of the word "parity" in

various provisions of the Indenture is typical for the industry based on hundreds of other

indentures he has seen.  (*See id.* at 10.)  Such an opinion is permissible under *FCCD Ltd.*, which held that experts may opine on whether certain provisions are "commonly found" in industry contracts.  2011 WL 519228, at *5.

Depfa also contends that Mr. Pope is trying to cloak legal conclusions, on Page 10, with the phrase "industry practice" when he states:  (1) the Indenture was consistent with industry practice in permitting four different classes of parity debt; (2) restrictions on additional parity bonds, and payment of unaccelerated debt other than as provided in the governing documents, normally would be stated explicitly because it is such a major departure from industry standards; and (3) the parties used standard industry language concerning payment on parity bonds.  (*See* Berman Decl., Ex. A, p. 10.)  Mr. Pope, however, described how the governing contracts contain provisions that are standard in the industry based on his experience, and how reasonably prudent industry participants would act when departing from these standards.  Such opinions are authorized by *Iacobelli*, 32 F.3d at 25, and *FCCD Ltd.*, 2011 WL 519228, at *5-6.  They are not legal conclusions about how to interpret the governing contracts or determine the rights and obligations of the parties.

In the cases cited by Depfa, expert testimony was excluded because it involved experts who (like Mr. Powers, and unlike Mr. Pope) strayed far beyond testifying about industry custom and practice, and instead testified about whether a contract was validly made or breached.  *See Marx*, 550 F.2d at 509 (district court improperly allowed expert to give opinion "on the legal standards which he believed to be derived from the [stock registration] contract and which should have governed [defendant's] conduct," instead of on practices in the securities business); *Sheet Metal Workers, Int'l Ass'n, Local Union No. 24 v. Architectural Metal Works, Inc.*, 259 F.3d 418, 424 n.4 (6th Cir. 2001) (expert testimony not permitted on whether collective

bargaining agreement imposed obligation to engage in interest arbitration); *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 180-181 (S.D.N.Y. 2008) (prohibiting expert testimony about "ultimate legal conclusions" as to whether party was an authorized agent or made a binding contract, but noting that, "[p]articularly in complex cases involving the securities industry, expert testimony may help a jury to understand unfamiliar terms and concepts"); *Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450, 528-29 (S.D.N.Y.), *amended in part by* 137 F. Supp. 2d 438 (S.D.N.Y. 2001) (prohibiting expert testimony on "legal conclusions regarding those ultimate issues" of whether defendants breached contract and implied covenant of good faith and fair dealing).

    **b.**    **<u>There Are No Legal Conclusions in Mr. Pope's Rebuttal Report.</u>**

        Depfa claims, without explanation, that Pages 1-2 of Mr. Pope's Rebuttal Report contains a legal conclusion couched as industry practice. (Depfa's Memorandum, p. 6.) These pages are within the first subsection of Part I of Mr. Pope's Rebuttal Report, which explains why Mr. Powers is incorrect regarding the meaning of the terms "supplement" and "amend" in the bond industry. (*See* Berman Decl., Ex. B, pp. 1-3.) Such opinions concern the meaning of specialized industry terms, and easily fall within the permitted boundaries. *See Iacobelli*, 32 F.3d at 25. Indeed, this subsection of the Rebuttal Report consists entirely of discussion of industry standards and practice, without any reference whatsoever to the ALL Series V transaction, the parties, or their rights. (*See* Berman Decl., Ex. B, pp. 1-3.)

        In the second subsection of Part I of his Rebuttal Report, Mr. Pope explains that the parties' use of the terms "amendment" and "supplement" and their conduct is consistent with industry practice. (*See id.* at 3-5.) Mr. Pope does not attempt to construe Section 5.03(a) of the Depfa SBPA, the consent provision at issue in this case. Instead, he describes what the parties

actually did, and how it compares to standard industry practice.

In the third subsection of Part I, Depfa purports to cite one example of an alleged legal conclusion. It appears on Page 5, where Mr. Pope states that Section 5.3(E) of the Indenture incorporates the payment terms of credit enhancements. But, like the example that Depfa cited from Page 4 of the First Report, Mr. Pope is making a permissible factual statement about the content of an Indenture provision, rather than a legal conclusion about any party's rights or obligations. On its face, Section 5.3(E) does exactly what Mr. Pope says it does, without leaving any room for reasonable debate. (*See* Trial Ex. 1, § 5.3(E).)

This opinion also is permissible because it describes industry practice. As Mr. Pope explains, it is routine for the payment terms of credit enhancements for additional bonds to be incorporated into the waterfall through a provision like Section 5.3(E). But that standard incorporation of redemption provisions into the Indenture is not considered an amendment in industry practice. (Berman Decl., Ex. B, pp. 5-6.) These opinions are relevant to the Court's determination of whether the Lloyds SBPA amended the Indenture, but they do not usurp the Court's function of construing Section 5.03(a) of the Depfa SBPA and any relevant Indenture provisions to determine if an amendment occurred.

In the first subsection of Part II of his Rebuttal Report, Mr. Pope explained why Mr. Powers' description of the concept of "parity" is inconsistent with standard industry usage. There is no discussion whatsoever of the deal at issue or any of the parties. (*See id.* at 1-3.)

In the second subsection of Part II, Depfa points to one alleged example of a legal conclusion. On Page 8, Mr. Pope points out that Mr. Powers' opinion – that the Depfa and Lloyds bonds are not in parity – is inconsistent with the governing contracts and industry practice. (*Id.* at 8.) In this very short section, Mr. Pope is not opining on how to construe any

provision of the contracts, but rather is simply disagreeing with and rebutting Mr. Powers'

opinion.  Mr. Pope's statement, therefore, is not a legal conclusion, and if it were, then Mr.

Powers' opinions also should be struck.

      **c.**     **Depfa's Comparison of the Pope and Powers Reports Demonstrates
Why the Former Is Admissible and the Latter Is Not.**

      In an attempt to demonstrate how Mr. Pope's opinions are legal conclusions,

Depfa offers two quotes from the Powers report that are, ironically, textbook examples of

inadmissible legal conclusions.  (Depfa's Memorandum, p. 7.)  In these examples, Mr. Powers

impermissibly gave the legal opinions that (1) "Depfa therefore enjoyed broader than usual

covenant rights and its consent was required before new bonds could be issued"; and (2) Lloyds'

receipt of greater than its pro rata share "is inconsistent with the assertion that Depfa's and

Lloyds' bonds were issued on a parity basis."  (*Id.*)  In both of these examples, Mr. Powers

answered the ultimate legal questions in the case:  that Depfa was entitled to consent to the

issuance of additional bonds, and those bonds were not in parity with Depfa's bonds.  And these

are just the two selected by Depfa as, presumably, its best examples of Mr. Powers giving non-

legal opinions.

      Mr. Powers' report does not even pretend to respect the boundaries between

expert opinions and legal conclusions.  He repeatedly, throughout his report, steps over the line

from discussing industry custom to giving opinions on the parties' contract rights.  (*See supra*

p. 4, quoting samples; *see also* Memorandum of Law in Support of The Bank of New York

Mellon Trust Company, N.A.'s Motion to Exclude Proposed Expert Testimony of Joel Powers

and Steven Thel, pp. 3, 17-19.)

Further, Depfa exaggerates Mr. Powers' experience by stating that he "has specialized in student loan-backed bonds and related liquidity facilities for twenty-five years." (Depfa's Memorandum, p. 7.)  In fact, Mr. Powers testified that he has only "approximately 10 years of experience in the student loan industry specifically."  (Berman Decl., Ex. G, p. 2).  In his deposition, Mr. Powers confirmed that he had no other meaningful bond experience in his career.  (Khondker Decl., Ex. A, at 48:25-51:5.)  He also testified that he worked on only 8-12 transactions involving SBPA's, like the Depfa SBPA at issue here.  (*Id.* at 42:11-16.)  For these reasons, Depfa should not invite comparisons between Mr. Powers and Mr. Pope.  Mr. Powers' experience is very thin, while Mr. Pope is one of the country's leading bond lawyers.  Given Mr. Powers' limited experience, it not surprising that his report is filled with legal conclusions rather than useful insights about the industry.

2.     **Mr. Pope Has Not Given Improper Opinions on the Intent of the Parties with Regard to the Provisions at Issue.**

Experts may testify on whether the conduct of contracting parties "conformed to [industry] customs, and whether such behavior evidences the parties' intent to be bound by contract." *Media Sport & Arts s.r.l. v. Kinney Shoe Corp.*, No. 95 CIV. 3901 (PKL), 1999 WL 946354, at *3-4 (S.D.N.Y. Oct. 19, 1999); *see also Marx*, 550 F.2d at 509 (expert testimony is admissible to enable jury to evaluate parties' conduct against standards of ordinary practice in industry).

Additionally, in *Iacobelli*, the Second Circuit held admissible expert testimony about how reasonably prudent industry participants would approach the interpretation of an industry contract, and the conclusions such participants would reach.  32 F.3d at 25.  Likewise, in *FCCD Ltd.*, the Court admitted expert testimony regarding how certain industry contract

provisions typically are used and what they are meant to accomplish.  2011 WL 519228, at *5.

   To the limited extent Mr. Pope mentions the parties' intent, it was to accomplish the above permitted purposes rather than usurp the Court's role in construing the contract to give legal effect to the parties' expressed intent.  For example, Depfa cites Page 4 of the Rebuttal Report, in which Mr. Pope states that the Indenture was drafted to give ALL flexibility to issue additional bonds.  This statement is a description of how master indentures are used in the industry.  *Id.*  It does not analyze any particular provision, nor does it state whether Depfa has the rights that it alleges in this action.

   Depfa also cites Mr. Pope's statement on Page 4 that the parties' "actions evidence that [they] did not intent to give Depfa a veto over the issuance of additional bonds." (Depfa Memorandum, p. 8.)  Such an opinion is permissible under *Media Sport*, 1999 WL 946354, at *3, because it analyzes whether the parties' conduct conformed to industry practice.

   Depfa also cites Page 5 of the Rebuttal Report, in which Mr. Pope states that, if the parties had intended to depart from industry practice (*i.e.*, the practice of not giving liquidity providers the right to consent to additional bonds), that veto power would have been explicitly stated.  This opinion is permissible because it concerns whether the parties' conduct, in not giving the explicit veto, conformed to standard industry practice.  *See id.*

   This opinion also is permissible because Mr. Pope did not opine about what the parties intended in Section 5.03(a) of the Depfa SBPA, but rather made a much more general statement about what types of vetos are "commonly found" in the industry, as permitted in *FCCD Ltd.*, 2011 WL 519228, at *5.  In other words, if the parties had intended to depart from industry practice, then, as an industry participant, he would have expected them to have been explicit about those intentions, because such a veto power is extremely unusual in industry

practice.

But even if any of these opinions were improper, Mr. Pope's comments on these subjects are brief and comprise only a small percentage of the opinions in his reports. These comments were made in direct response to Mr. Powers' opinions regarding the parties' intent, rights, and obligations, and the legal effect of the provisions at issue. The vast majority of Mr. Pope's opinion is focused on the meaning of specialized terms of art, which indisputably is admissible under FRE 702.

Depfa mistakenly relies on *CMI-Trading,* 98 F.3d at 890. That case is distinguishable because the expert's opinion as to whether the parties intended to enter a joint venture was, in fact, a legal opinion about the creation and legal effect of one type of contract versus another. *Id.* The other two cases cited by Depfa involved factual situations that are not remotely comparable to the present one. *See In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) (expert not permitted to speculate about drug manufacturer's motives in seeking regulatory approval); *Amster v. River Capital Int'l Group LLC*, 00 Civ. 9708, 2003 U.S. Dist. LEXIS 4619, at *4 (S.D.N.Y. Mar. 26, 2003) (expert not permitted to testify on whether defendant intended to defraud plaintiff). None of these cases involved experts like Mr. Pope, who, in his Rebuttal Report, gave permissible opinions about whether the parties' agreements and conduct conformed to industry norms.

**3.      If Depfa's Motion is Granted, It Should Be Granted Only as to the Specific Portion of Mr. Pope's Opinion That the Court Deems Improper.**

Depfa was able to cite only three places in Mr. Pope's First Report where it alleges he offers legal conclusions, on Pages 4, 7 and 10. None of these portions fell within Part I of Mr. Pope's report on "The Meaning of Parity in the Bond Industry," so there is no

possible basis to strike any portion of Part I. Depfa could cite only Pages 5 and 8 of the Rebuttal

Report as allegedly containing legal conclusions.

Similarly, Depfa only offers five examples of Mr. Pope allegedly opining as to the

parties' intent, four of which are in his Rebuttal Report, one in his deposition, and *none* in his

First Report. (*See* Depfa's Memorandum, pp. 8-9.)

Thus, there are significant portions of Mr. Pope's opinion which have not been

attacked in Depfa's motion. As for the examples cited by Depfa, as explained above, they are

neither impermissible legal conclusions nor factual determinations of intent. But even if the

Court were to grant Depfa's motion, it should do so only as to the particular portion(s) of Mr.

Pope's opinion identified by Depfa that the Court deems improper, and allow him to testify about

the remainder of his opinion.

### Conclusion

For the reasons stated above, the Court should deny Depfa's motion in its entirety.

Alternatively, the Court should grant the motion only to the extent of excluding the specific

portions of Mr. Pope's opinions that the Court deems improper, and allowing him to testify on all

other portions.

16

Dated: November 14, 2011
      New York, New York

MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO, P.C.

By: _____
    Robert I. Bodian
    David L. Barres
    Omar A. Khondker
Chrysler Center
666 Third Avenue, 25th Floor
New York, New York 10017
(212) 935-3000

*Attorneys for defendant and third-party
plaintiff Lloyds TSB Bank plc*

17

## CERTIFICATE OF SERVICE

On November 14, 2011, I caused to be served by email a true and accurate copy of the following on the counsel listed below:

1. Pretrial Reply Memorandum of Law of Defendant and Third-Party Plaintiff Lloyds TSB Bank plc;

2. Memorandum of Law of Defendant and Third-Party Plaintiff Lloyds TSB Bank plc in Opposition to Motion in Limine to Exclude Evidence of Damages;

3. Declaration of David L. Barres in Opposition to Motion in Limine to Exclude Evidence of Damages;

4. Memorandum of Law of Defendant and Third-Party Plaintiff Lloyds TSB Bank plc in Opposition to Motion in Limine to Exclude Expert Testimony of Robert Dean Pope; and

5. Declaration of Omar A. Khondker in Opposition to Motion in Limine to Exclude Expert Testimony of Robert Dean Pope.

Scott M. Berman, Esq.
Eric Seiler, Esq.
Jeffrey C. Fourmaux, Esq.
Alexander D. Levi, Esq.
FRIEDMAN KAPLAN SEILER &
ADELMAN LLP
7 Times Square
New York, NY 10036-6516
eseiler@fklaw.com
sberman@fklaw.com
jfourmaux@fklaw.com
alevi@fklaw.com

*Attorneys for defendant*
*DEPFA BANK plc*

Scott R. Kipnis, Esq.
Nicholas B. Malito, Esq.
HOFHEIMER GARTLIR & GROSS, LLP
530 Fifth Avenue
New York, NY 10036
skipnis@hgg.com
nmalito@hgg.com

Dean C. Waldt, Esq.
Mariah Murphy, Esq.
BALLARD SPAHR LLP
210 Lake Drive East, Suite 200
Cherry Hill, NJ 08002-1163
waldtd@ballardspahr.com
murphym@ballardspahr.com

*Attorneys for third-party defendant Access to*
*Loans for Learning Student Loan*
*Corporation*

James J. Coster, Esq.
Glenn Edwards, Esq.
Walter Saurack, Esq.
SATTERLEE STEPHENS BURKE &
BURKE LLP
230 Park Ave.
New York, NY  10169
jcoster@ssbb.com
gedwards@ssbb.com
wsaurack@ssbb.com

*Attorneys for third-party defendant*
*JP Morgan Chase Bank, N.A.*

Judith A. Archer, Esq.
Sarah E. O'Connell, Esq.
FULBRIGHT & JAWORSKI L.L.P
666 Fifth Ave.
New York, NY  10103-3198
jarcher@fulbright.com
soconnell@fulbright.com

*Attorneys for plaintiff The Bank of New York*
*Mellon Trust Company, N.A.*

Dated:  November 14, 2011
        New York, New York

Omar Khondker